*924 OPINION
By the Court,
Steffen, C. J.:
Appellant John Martin filed suit against his employer, respondent Sears, Roebuck and Co. (“Sears”), for wrongful termination in connection with Martin’s manipulation of a store account in order to win a sales contest with other Sears’ stores. For reasons specified hereafter, we conclude that the district court properly disposed of Martin’s claim via summary judgment.

FACTS

Martin was employed by Sears from July 15, 1959, until April 17, 1984, when he was discharged. In January of 1984, Martin *925 and his store manager agreed to a ploy involving the transfer of funds from a restitution account to maintenance agreements on televisions and video cassette recorders. The transfer of funds inflated the number of maintenance agreements sold in the store where Martin was employed, thus giving Martin’s store an undeserved advantage in a sales contest against other Sears’ stores.[1]
Martin, who was operating superintendent at the Las Vegas Meadows Mall Sears’ store, ordered the security manager to remove $1,073.16 from a restitution account. Martin then directed the appliance manager to place the sum taken from the restitution account into maintenance agreements. The security manager subsequently reported Martin’s diversion of funds to a Sears’ group manager in Los Angeles.
On April 4, 1984, in the course of Sears’ investigation of Martin, Sears’ group manager J. E. Besse recommended to Stephen Thorpe, Sears’ territorial personnel director, that Martin be released because he had a record of manipulating company funds and had created an unworkable relationship between himself and the security manager. However, this recommendation was rejected in deference to the length of Martin’s employment with Sears. Thorpe determined that because Martin improperly transferred funds and falsified company records, a demotion was more appropriate. On April 16, 1984, Besse informed Martin that he could resign or accept a demotion. The following day, Martin chose to resign.
Martin filed a lawsuit for wrongful discharge and Sears responded with a successful motion for summary judgment.
I. Constructive Discharge
Martin argues that he was constructively discharged because Sears requested that he accept a demotion to a sales position (with a forty percent cut in pay) or resign. We disagree.
A constructive discharge has been held to exist when an employer creates working conditions so intolerable and discriminatory that a reasonable person in the employee’s position would feel compelled to resign. Satterwhite v. Smith, 744 F.2d 1380, 1381 (9th Cir. 1984). More particularly, the court in Brady v. *926 Elixir Industries, 196 Cal. App. 3d 1299 (Cal. Ct. App. 1987), held that a tortious constructive discharge is shown to exist upon proof that: (1) the employee’s resignation was induced by actions and conditions that are violative of public policy; (2) a reasonable person in the employee’s position at the time of resignation would have also resigned because of the aggravated and intolerable employment actions and conditions; (3) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied. Id. at 1306.
After an investigation of Martin’s conduct, Sears determined that he should be relieved as operating superintendent and demoted to a sales position. Martin was informed that if he chose resignation over demotion, he would still receive his retirement rights and severance pay. Only after Martin discussed his options with his spouse did he inform Besse of his decision to resign. These facts do not reflect a violation of public policy and are insufficient to constitute working conditions so intolerable that a reasonable person in the employee’s position would resign. Sears undertook reasonable measures, short of termination, to discipline Martin for conduct both unauthorized and undeserving of a position of trust and responsibility. A tortious constructive discharge did not occur.
II. At-will Employment
Martin next argues that he enjoyed contractual employment which could only be terminated for cause. Specifically, Martin insists that because he agreed “to conform to the rules and regulations of Sears,” he was protected from at-will termination. He further contends that because the Sears employee handbook states that “violation of these rules may result in termination of your employment,” Sears must provide a procedure to determine if a rule has been violated prior to termination.
In order to adequately address Martin’s claims, it is essential to again consider the doctrine of at-will employment as determined by this court in previous decisions.
At the heart of the doctrine is the general rule that at-will employment can be terminated without liability by either the employer or the employee at any time and for any reason or no reason. Phillips v. Goodyear Tire & Rubber Co., 651 F.2d 1051 (5th Cir. 1981). Limited exceptions to the general rule have been recognized by this and other courts as imperatives emanating from strong public policy. Hansen v. Harrah’s, 100 Nev 60, 675 P.2d 394 (1984) (at-will doctrine subject to strong public policy exceptions); K Mart v. Ponsock, 103 Nev. 39, 47, 732 P.2d *927 1364, 1369 (1987) (employer has absolute right to terminate at-will employee at-will or at-whim unless offends public policy). Of course, employers and employees remain free to contractually modify an employee’s at-will status, orally or in writing. American Bank Stationery v. Farmer, 106 Nev. 698, 703, 799 P.2d 1100, 1102 (1990). Initially, however, all employees in Nevada are presumptively at-will employees. Id. at 701, 799 P.2d at 1101-2. This presumption may be rebutted by proving, by a preponderance of the evidence, that there was an express or implied contract between the employer and the employee which indicates that the employer would only terminate the employee for cause. Id.
Martin seeks to justify his right to relief by invoking three distinct theories of recovery which assertedly apply, individually and collectively, to his case: discharge in breach of an implied-in-fact contract, discharge in violation of the implied covenant of good faith and fair dealing, and discharge in violation of public policy.
A. Breach of an implied-in-fact contract
This court first recognized an implied-in-fact contract exception to the at-will doctrine in Southwest Gas Corp. v. Ahmad, 99 Nev. 594, 668 P.2d 261 (1983). In Ahmad, an employee was terminated for cause. Under the facts of Ahmad, we concluded that inferentially, the employees’ handbook formed part of the employment contract. Prior to her discharge, Ahmad was not afforded formal, pre-termination procedures as outlined in the employee handbook. Therefore, this court held that Southwest violated the procedures outlined in the employees’ handbook, which, by inference, formed the basis for a contractual agreement in derogation of an at-will status. In 1990, we were again faced with the issue of the legal effect of the provisions of an employees’ handbook. American Bank Stationery v. Farmer, 106 Nev. 698, 799 P.2d 1100 (1990). In Farmer, we held that since the handbook provided for discharge only for cause, the employment status was modified from at-will to employment terminable solely for cause. We noted, however, that employment at-will is not automatically transformed to employment terminable for cause merely because of the existence of an employees’ handbook explaining a company’s policies regarding termination. To rule otherwise “could discourage companies from publishing such handbooks.” Id. at 703, 799 P.2d at 1102. We reaffirm the latter observation.
Martin contends that he enjoyed a contract of employment terminable only for cause. The claim is without merit. Specifi *928 cally, Martin has failed to overcome the legal presumption of at-will employment. Id. at 701, 799 P.2d at 1101. Since a claim arising from breach of contract has no application to at-will employment, and Martin has not demonstrated that he was other than an at-will employee, a breach of contract cause of action will not lie. Bally’s Employees’ Credit Union v. Wallen, 105 Nev. 553, 555, 779 P.2d 956, 957 (1989).
During Martin’s hiring by Sears, he executed a written application for employment which specifically stated that his employment could be “terminated with or without cause, and with or without notice, at any time, at the option of either the Company or [Martin].” The quoted provision in the employment application is traditional at-will language designed to clearly inform a prospective employee of his or her employment status. Moreover, the Sears’ Personnel Manual explains that:
[T]he representations referring to causes for termination are not intended as any limitation on Sears’ termination authority, and should not give rise to any expectations of continued indefinite employment where such causes are not present. This Manual, in common with other Sears employee manuals, handbooks, etc., is not intended to, and indeed does not, bestow any additional rights to employment or employment benefits to Sears employees.
Sears took deliberate measures to inform its employees of the at-will nature of the employment relationship. Accordingly, we hold that the district court’s finding that Martin was an at-will employee is supported by substantial evidence and is consistent with Nevada law.
B. Bad faith discharge in violation of the implied covenant of good faith and fair dealing
Martin next claims that because of “numerous oral assurances,” there existed an express or implied contract of employment, including an implied covenant of good faith and fair dealing. We first recognized the tort of bad faith discharge in K Mart Corp. v. Ponsock. In Ponsock, K Mart had hired Ponsock “until retirement” and for “as long as economically possible.” Nine and one-half years later, K Mart terminated Ponsock, an admittedly excellent, long-term employee, only six months before his retirement benefits would .have fully vested. It was determined that K Mart’s true motive in terminating Ponsock was to divest him of his retirement rights. Accordingly, this court held that a claim for bad faith discharge would lie in the fact-specific instance where a tenured employee who enjoyed a right to continued employment was discharged by a large, nationwide employer *929 in bad faith for the improper motive of defeating contractual retirement benefits. Id. at 48, 732 P.2d at 1369-70. Bad faith discharge finds its genesis in Section 205 of the Restatement (Second) of Contracts, which states that: “Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.” For this cause of action to apply, specific elements must exist. First, there must be an enforceable contract. Second, there must be a special relationship between the tortfeasor and the tort victim, such as the relationship that exists between an insured and an insurer, that is, a relationship of trust and special reliance. Id. at 49, 732 P.2d at 1370. Third, the employer’s conduct must go “well beyond the bounds of ordinary liability for breach of contract.” Id. at 48, 732 P.2d at 1370. However, the mere breach of an employment contract by a large and powerful employer, or any employer, does not in and of itself give rise to tort damages. Id. The reason tort damages are appropriate for bad faith discharge is that ordinary contract damages do not adequately compensate, nor do they make the victim whole. Id. at 49, 732 P.2d at 1371.
As indicated above, breach of contract and bad faith discharge are not applicable to at-will employment. Wallen, 105 Nev. 553, 555, 779 P.2d 956, 957. Martin has offered no evidence of an oral contract other than general expressions of his own subjective expectations of long term employment. Such expectations are insufficient to substantiate an express or implied agreement for continuing employment. This court has held that general expressions of long term employment do not transform at-will employment to employment contracts terminable only for cause. Vancheri v. GNLV Corp., 105 Nev 417, 422, 111 P.2d 366, 368 (1989). Because Martin was an at-will employee, his claim for bad faith discharge must fail.
C. Discharge in violation of public policy
Martin’s final argument is that he was constructively discharged in violation of public policy. Specifically, Martin alleges that he was discriminated against because of his age (forty-six) and to reduce Sears’ costs.
A tortious discharge in violation of public policy may arise in an at-will employment setting. Ponsock, 103 Nev. at 46, 732 P.2d at 1369. We first recognized this cause of action in Hansen v. Harrah’s, 100 Nev 60, 675 P.2d 394 (1984). In Hansen, employees were terminated in retaliation for filing workers’ compensation claims justified by work-related injuries. We held that retaliatory discharge under such circumstances was repugnant to and violative of Nevada’s strong public policy in favor of protecting and providing for injured workers. Id. at 63, 675 P.2d at 396. *930 Accordingly, a narrow exception to the at-will doctrine was created which recognized that “retaliatory discharge by an employer stemming from the filing of a workmen’s compensation claim by an injured employee is actionable in tort.” Id. at 64, 675 P.2d at 397.
Martin seeks to place his own situation within a public policy exception relating to age discrimination through means of an internal letter or memorandum written by Besse discussing the basis for the termination. Unfortunately for Martin, the letter is unsupportive of his claim as a matter of law because the letter does not refer, either expressly or by reasonable inference, to Martin’s age.[2] Moreover, age discrimination does not fit into the narrow public policy exception to the “at-will” employment doctrine. Sands Regent v. Valgardson, 105 Nev. 436, 439, 777 P.2d 898, 899 (1989).

CONCLUSION

Based upon our review of the record and for reasons discussed above, we conclude that the district court properly entered summary judgment against Martin. Accordingly, the summary judgment is affirmed.[3]

This was not Martin’s first attempt to accomplish a desired objective by an unauthorized manipulation of store funds. In 1978, while working as an assistant manager at Sears’ Lancaster, California store, Martin diverted funds from the sale of cardboard boxes to finance a Sears’ company picnic that Martin was promoting. Upon discovery of Martin’s diversion of funds, Sears gave Martin a corrective interview.

Besse’s letter stated:
This is pursuant to our phone conversation regarding John Martin, Operating Superintendent, Las Vegas-Meadows.
I think we should release him. He has a record of manipulating Company funds. He has probably created an unworkable relationship between himself and the Security Manager. Moreover, as our Company progresses with sophisticated systems, and if the Store Manager-Operating Superintendent team becomes the future staffing standard, John Martin will not be capable of fulfilling the responsibilities of the job. At some future time we will probably have to deal with him anyway.

The Honorable Miriam Shearing, Justice, did not participate in the decision of this matter.