97 F.3d 1461
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charlotte SUMMERS, Plaintiff-Appellant,
v.
UNIVERSITY OF NEVADA LAS VEGAS, a division of the University
of Nevada System; Carolyn Sparks; Shelley
Berkley; Jill Derby; James Eardley, et
al., Defendants-Appellees.
 No. 95-15792.
 United States Court of Appeals, Ninth Circuit.
 Argued Aug. 14, 1996.
Submitted Aug. 23, 1996.
Decided Sept. 16, 1996.
 
 1
 Before: WIGGINS and TROTT, Circuit Judges, and VANCE, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Charlotte Summers filed a lawsuit against the University of Nevada Las Vegas (UNLV) because UNLV did not reappoint her to the position of Senior Assistant Athletic Director-Finance, and because it placed her on administrative leave. After discovery, the district court granted summary judgment on some of Summers' claims, but allowed several of her other claims to proceed to trial. The jury found in favor of UNLV.
 
 
 4
 On appeal, Summers argues that the district court erred by: (1) granting summary judgment on her Title VII claim for sex discrimination; (2) granting summary judgment on her Nevada breach-of-contract claims because Summers was an at-will employee; (3) dismissing her claim for negligent infliction of emotional distress; and (4) only allowing Summers ten minutes to question UNLV's affirmative action officer.
 
 
 5
 We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 6
 * BACKGROUND
 
 
 7
 Summers is a 60-year-old woman. She began working for UNLV in 1970. Over the years, she was promoted to positions with more responsibility and prestige, culminating with her 1987 promotion to Senior Assistant Athletic Director-Finance. All of Summers' employment contracts were for one year. Like other employees of UNLV, Summers was evaluated annually. She never received a negative evaluation.
 
 
 8
 In November of 1991, James Weaver became the Athletic Director of UNLV after resigning from a position at the University of Florida. Shortly thereafter, Tom Gabbard was hired to fill the new position of Director of Administration in the Athletic Department. UNLV did not advertise for, or interview, any other candidates for Director of Administration position. Gabbard is male and twelve years younger than Summers.
 
 
 9
 On June 26, 1992, Summers received a Notice of Nonreappointment to her position as Senior Assistant Athletic Director-Finance. The notice stated that her employment would terminate on June 30, 1993, approximately one year after she received the notice. Summers requested a statement in writing of the reasons for her nonreappointment. Weaver responded in a timely fashion. Summers then asked that Robert Maxson, president of UNLV, reconsider her Notice of Nonreappointment. Maxson did so, although an independent investigation was not performed.
 
 
 10
 Summers was placed on administrative leave, with full pay and benefits, from July 9, 1992 through June 30, 1993. Her employment with the University ended on June 30, 1993.
 
 II
 STANDARD OF REVIEW
 
 11
 We review grants of summary judgment de novo, Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir.1994), and will uphold the district court's decision if the party opposing summary judgment presented only a "mere scintilla of evidence to support its case". City of Vernon v. Southern Cal. Edison Co., 955 F.2d 1361, 1369 (9th Cir.), cert. denied, 506 U.S. 908 (1992). The district court's decisions regarding the manner in which it conducts a trial are reviewed for abuse of discretion. Hansen v. C.I.R., 820 F.2d 1464, 1467 (9th Cir.1987).
 
 III
 DISCUSSION
 
 12
 A. Did the district court err in granting summary judgment on Summers' Title VII claim for sex discrimination?
 
 
 13
 In order to prove a prima facie case of sex discrimination based on disparate treatment, a plaintiff must show: (1) that she was a member of the protected class; (2) that she was performing her job in a satisfactory manner when discharged; and (3) that she was replaced by a male. Jones v. L.A. Community College Dist., 702 F.2d 203, 205 (9th Cir.1983). Once a prima facie case is established, the burden shifts to the employer to give a nondiscriminatory reason for the decision. If such a reason is given, the burden of proof returns to the plaintiff to show that the employer's explanation is pretext for a discriminatory motive. Johnson v. Transportation Agency, 480 U.S. 616, 626 (1987).
 
 
 14
 Here, the district court found that Summers proved her prima facie case because she showed: (1) she was a member of the protected class (female); (2) she was performing her job in a satisfactory manner; and (3) she was replaced by Tom Gabbard.[1] ER tab 5 at 6, 13. UNLV came forward with a nondiscriminatory rational for Summers' treatment: Weaver found it difficult to get information from Summers and therefore believed that she lacked the skills necessary for her job. Id. at 8. The burden then shifted back to Summers to show that this reason was pretextual. The district court held that Summers did not meet her burden and granted summary judgment in favor of UNLV.
 
 
 15
 Summers argues that she presented sufficient evidence of pretext to survive summary judgment by showing that: (1) UNLV failed to follow its affirmative action policy when it hired Gabbard, Summers' replacement; (2) UNLV placed Summers on administrative leave after she retained a lawyer to discuss matters of her employment, but UNLV did not place Jim Tarkanian and Tim Grgurich on administrative leave when they hired employment lawyers to handle their disputes with the University; (3) many more men than women occupy highly-paid administrative positions at UNLV; and (4) Weaver called Summers "coach" and once referred to a meeting with his female staff as a meeting with his "harem." In addition, Summers argues that UNLV's proffered rationale for her termination, that she was unqualified, should be treated with suspicion because it is subjective and because she had never received a negative evaluation for her work at the University before she received her notice of nonreappointment. See, Jaurequi v. City of Glendale, 852 F.2d 1128, 1136 (9th Cir.1988).
 
 
 16
 As we will explain below, Summers has shown, at most, a mere scintilla of evidence of sex discrimination, and therefore summary judgment was proper.
 
 
 17
 1. UNLV's failure to follow its affirmative action plan
 
 
 18
 Summers contends that UNLV's failure to follow its affirmative action plan when it hired Gabbard is evidence of discriminatory intent. If UNLV had followed the plan, Summers argues, she would have been hired for the position instead of Gabbard. To support her view, Summers cites Gonzalez v. Police Dept., 901 F.2d 758 (9th Cir.1990), which explains that "the failure of an employer to follow its own affirmative action program constitutes significant evidence in a Title VII suit against the employer." Id. at 761 n. 2.
 
 
 19
 The district court held that UNLV's failure to follow its affirmative action plan was irrelevant and distinguished Gonzalez. In Gonzalez the plaintiff, a Hispanic, claimed that he was skipped over for promotion because of race discrimination, and pointed to the fact that every time he was denied promotion his employer failed to follow its affirmative action program designed to encourage the promotion of minorities. In contrast, the district court said, Summers alleged that she was not reappointed to her position, and the only affirmative action program UNLV failed to follow concerned the hiring of her replacement. ER tab 5 at 14.
 
 
 20
 We believe that the district court's reasoning is in error. For the purposes of summary judgment Summers showed: (1) Gabbard replaced her when he was hired; and (2) UNLV did not follow its own affirmative action policy in hiring Gabbard. The implication from these two facts is that UNLV did not follow its affirmative action policy when it replaced Summers with Gabbard. Therefore, under Gonzalez, it appears that Summers has presented at least some evidence of pretext.
 
 2. Statistical Evidence of Discrimination
 
 21
 The Supreme Court has held that statistical evidence may be helpful to determine whether an employer's actions "conform to a general pattern of discrimination." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 805 (1973). However, the "[w]eight to be accorded such statistics is determined by the existence of independent evidence of discrimination." American Fed. of State, Cty., and Municipal Employees, AFL-CIO v. Washington, 770 F.2d 1401, 1407 (9th Cir.1985); see also, Kingsley R. Browne, "Statistical Proof of Discrimination: Beyond 'Dammed Lies'," 68 Wash.L.Rev. 477, 542 (1993) ("If the employer has in fact routinely engaged in discrimination, then by definition individual victims abound...."). Moreover, the probative value of the plaintiff's statistics to prove pretext "depend[s] primarily upon their relevance to the specific decision affecting the individual plaintiff [and not] those that affect plaintiff's protected class in general." Penk v. Oregon State Board of Higher Ed., 816 F.2d 458, 462 (9th Cir.1987) (quoting B. Schlei & P. Grossman, Employment Discrimination Law 1316 (2d. 1983)), cert. denied, 484 U.S. 853 (1987).
 
 
 22
 Here, Summers presented evidence showing that three women at UNLV occupied administrative and professional positions which paid more than $55,000 a year, while forty-five men occupied such positions. This disparity might tend to show a general trend of discrimination, and therefore may be considered. However, the disparity's probative value is slight because Summers has not shown how it demonstrates that UNLV's nondiscriminatory reason for not reappointing her was pretextual.
 
 
 23
 3. UNLV's treatment of Coaches Tarkanian and Grgurich
 
 
 24
 Summers argues that Weaver treated her differently from men because she was placed on administrative leave after retaining an attorney to discuss her employment contract, while Jerry Tarkanian and Tim Grgurich, UNLV's basketball coach and chief assistant basketball coach, respectively, were not placed on administrative leave when they retained attorneys to discuss their employment contracts. The district court admitted that it had "a difficult time making the connection between these occurrences." ER tab 5 at 15. Frankly, so do we.
 
 4. Weaver's language
 
 25
 Summers argues that Weaver made statements to her which show that UNLV's nondiscriminatory rational for not reappointing her was pretextual. Specifically, Summers alleges that Weaver called her "Coach" instead of her name, and that he once referred to a meeting with his female staff as a meeting with his "harem."
 
 
 26
 The fact that Weaver called Summers "Coach" is very weak evidence of discriminatory animus. This remark does not appear to be out of place in a university athletic office. Furthermore, Summers has failed to show that Weavers one-time use of the word "harem" was anything more than a stray remark, and therefore is insufficient by itself to establish discrimination. Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir.1990).
 
 5. Conclusion
 
 27
 The strongest evidence that Summers has to prove pretext is that UNLV did not follow its affirmative action policy when it hired her replacement. In addition, Summers' statistical evidence might tend to show a general trend of discrimination. However, these two factors together are plainly insufficient to allow a reasonable jury to return a verdict for Summers, and therefore summary judgment was appropriate.
 
 
 28
 B. Was summary judgment on Summers' state law contracts claims proper because she was an at-will employee?[2]
 
 
 29
 Employment in Nevada is presumed to be at-will. Martin v. Sears, Roebuck & Co., 899 P.2d 551, 554 (Nev.1995). Unless the termination falls into the "public policy" exception to the at-will doctrine (which does not apply here), an employer may terminate an at-will employee for any reason, or no reason, and not incur liability. See, Bigelow v. Bullard, 901 P.2d 630, 631-32 (Nev.1995).
 
 
 30
 The district court concluded that under Summers' year-to-year contracts, she was an at-will employee and therefore granted summary judgment on her state contract law actions. Summers contends that the district court should be reversed because: (1) under Nev.Rev.Stat. § 281.370, state employees are not employed at-will; and (2) the practices and dealing between UNLV and her demonstrate that her employment was not at-will.
 
 
 31
 1. Does Nev.Rev.Stat. § 281.370(1) overcome the presumption that Summers is an at-will employee?
 
 
 32
 Summers contends that Nev.Rev.Stat. § 281.370 is incompatible with the notion that she is an at-will employee. Section 281.370(1) states:
 
 
 33
 All personnel actions taken by state, county or municipal departments, housing authorities, agencies, boards or appointing officers thereof must be based solely upon merit and fitness.
 
 
 34
 (Emphasis added). This section applies to all employees at Nevada's universities, Board of Regents v. Oakley, 637 P.2d 1199 (Nev.1981), except to student employees, physicians in a residency program, and postdoctoral fellows. Nev.Rev.Stat. § 396.251. Summers argues that because the decision not to reappoint her is a personnel action, § 281.370(1) mandates that UNLV's decision may be based only on her merit and fitness and therefore she is not an at-will employee.
 
 
 35
 UNLV argues that § 281.370 does not change Summers' at-will status because there is no private cause of action under § 281.370; it cites Palmer v. Nevada, 787 P.2d 803, 805 (Nev.1990), for support. In Palmer, the Nevada Supreme Court was presented with a plaintiff who attempted to bring a claim directly under § 281.370. The court dismissed this claim in one short paragraph:
 
 
 36
 Palmer's second contention, that her complaint could have been brought directly under NRS 381.370, lacks merit. NRS 281.370 does not provide for any private right of action. Therefore there is no basis for allowing Palmer to proceed with her cause of action under that statute.
 
 
 37
 Id. (footnote providing text of § 281.370 omitted).
 
 
 38
 Summers argues, essentially, that Palmer does not apply because she is not bringing a suit directly under § 281.370. Rather, she claims that § 281.370 governs the relationship between her and UNLV. Although Summers cites no cases in support of her argument, two Nevada cases might be applicable. In Oakley, the Nevada Supreme Court upheld an injunction prohibiting the University of Nevada Board of Regents from enforcing an age-based mandatory retirement policy because the policy violated § 281.370. Similarly, in Clark County School Dist. v. Beebe, 533 P.2d 161 (Nev.1975), the court held that under § 281.370, public school teachers could not be forced to retire because of their age.
 
 
 39
 However, Oakley and Whealen do not help Summers' argument because those cases concerned mandatory retirement--the termination of an exiting contractual relationship. Here, in contrast, Summers is attempting to apply § 281.370 to a reappointment decision--essentially, a decision to hire her again. Her contract rights of action ended at the expiration of her contract. As her cause of action cannot flow from the contract itself, it must flow, if at all, from § 281.370, regardless of how Summers labels her claims. However, this direct cause of action was removed by Palmer and, consequentially, Summers has no remedy.
 
 
 40
 2. Do the practices and dealings of UNLV and Summers overcome the presumption that her employment was at-will?
 
 
 41
 Summers also contends that summary judgment should be reversed because a jury could find that the practices and dealings of UNLV and her demonstrate that her employment was not at-will. See D'Angelo v. Gardner, 819 P.2d 206, 209 (1991) (an employee may show that her employment was not at-will if a "contractual obligation of continued employment" can be inferred from the dealings and practices of the parties). Summers argues that the fact that UNLV offered her early retirement benefits is inconsistent with the idea that she is an at-will employee.
 
 
 42
 This argument is not persuasive. In Nevada, the fact that an employer is willing to give employees a generous benefit package does not rebut the presumption that an employee is at-will because such packages are "generic features of many employment relationships." Brooks v. Hilton Casinos, Inc., 959 F.2d 757, 760 (9th Cir.1992), cert. denied, 506 U.S. 906 (1992). Therefore, we affirm the district court's grant of summary judgment.
 
 
 43
 C. Did Summers have a property interest in her continued employment?
 
 
 44
 Summers contends that under Perry v. Sinderman, 408 U.S. 593 (1972), and Tarkanian v. UNLV, 741 P.2d 1345, rev. on other grounds, 488 U.S. 179 (1988), she has a property interest in her position. Summers argument is based on the mistaken premise that she alleged a claim for violation of due process. She did not. See supra note 2. Therefore, Perry and Tarkanian do not apply.
 
 
 45
 D. Did the district court err in dismissing Summers' claim for negligent infliction of emotional distress?
 
 
 46
 Summers contends that the district court erred by dismissing her claim for negligent infliction of emotional distress. However, the district court later reversed itself and permitted Summers to present the issue of negligent infliction of emotional distress to the jury. Therefore, no error occurred.
 
 
 47
 E. Did the district court abuse its discretion by refusing to reopen the case for more than ten minutes so that Summers could question Lujan?
 
 
 48
 Of the claims that survived summary judgment, the most predominant was that UNLV committed age discrimination when it decided not to reappoint Summers. A plaintiff alleging age discrimination faces a shifting burden of proof similar to that of a plaintiff alleging sex discrimination. First, the plaintiff must present a prima facie case of age discrimination. If the plaintiff makes a prima facie case, the burden shifts to the defendant to produce evidence of a nondiscriminatory reason for its decision. If the defendant does so, the burden returns to the plaintiff to prove that the defendant's proffered reason is pretextual. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).
 
 
 49
 During Summers' case-in-chief, UNLV presented its legitimate, nondiscriminatory reasons for the nonreappointment decision through Summers' witnesses. The district court permitted UNLV to present its case this way in order to expedite the trial. RT day 2 at 168.
 
 
 50
 At several points in the trial, Summers attempted to introduce the testimony of John Lujan in order to establish that UNLV's proffered nondiscriminatory reason was pretextual. John Lujan was the affirmative action officer of UNLV and would have testified that Tom Gabbard, who allegedly replaced Summers, was not hired in a manner that complied with UNLV's affirmative action plan. RT day 2, 194-99. The district court refused to allow the testimony during Summers' case-in-chief, but said that it would allow Lujan to testify in rebuttal. RT day 2 at 235.
 
 
 51
 After Summers presented her case-in-chief, the defense rested without putting on any case-in-chief of its own. Summers then attempted to present her rebuttal case to show that UNLV's proffered legitimate reason was pretextual. The district court stated that it would allow Summers to reopen for ten minutes. RT day 4 at 22-23. Summers replied that her rebuttal case would consist primarily of Lujan's testimony, and that Lujan's testimony would take about an hour. Id. at 22, 24. The court offered her ten minutes again, but Summers refused saying:
 
 
 52
 Ms. Killeen: As I informed your honor in chambers earlier today, we spent months going through painstaking collections of documents and evidence on this issue. There were two days of testimony by Mr, Lujan in deposition in my office. The material is extensive, the questioning is extensive, and it leads to other evidence if we are permitted to open that line of inquiry. I cannot reopen the case under these severe restrictions and do it justice.
 
 
 53
 Court: Okay. Then we won't reopen it at all.
 
 
 54
 Day 4 at 25-26.
 
 
 55
 Summers characterizes the court's action as a failure to reopen. However, the court offered to reopen and Summers refused. The correct way to frame Summers' argument is that the ten-minute time-limit the court imposed on Summers' was unreasonable. Unfortunately for Summers, this argument fails.
 
 
 56
 Under Fed.R.Evid. 611(a), the district court is charged with exercising "reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... avoid needless consumption of time...." Here, the district court offered Summers ten minutes to question Lujan. Summers has not explained in her appellate briefs why it would have been impossible to comply with the district court's ten-minute time-limit, and her refusal to proceed with her examination makes it impossible for us to determine whether the district court's action was reasonable. Therefore, we hold that the district court did not abuse its discretion by limiting the time available for Summers to question Lujan.
 
 
 57
 AFFIRMED.
 
 
 
 *
 The Honorable Sarah S. Vance, United States District Judge for the Eastern District of Louisiana, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 UNLV argues that Summers did not show she was replaced by Gabbard. However, Summers alleged, in her verified complaint, that Weaver told her that she "was being removed from her position and that Tom Gabbard was being placed in charge of the athletic business office...." ER tab 1 at 6. From this statement, it is possible to infer that Gabbard was going to take over Summers' responsibilities and replace her. Therefore, for the purposes of summary judgment, Summers has brought forth sufficient evidence to support her prima facie case
 
 
 [2]
 Summers contends the district court should not have granted summary judgment on her Constitutional due process claims because she had a property interest in her employment. However, as the district court correctly pointed out, Summers' complaint does not contain a due-process claim, rather, it only alleges violations of the Fourteenth Amendment based on the Equal Protection Clause