**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT R. NORTON,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>PHC-ELKO, INC., agent of Northeastern Nevada Regional Hospital,<br><br>Defendant-Appellee. | No. 14-17021<br><br>D.C. No.<br>3:13-cv-00169-RCJ-WGC<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Submitted November 18, 2016[**]
San Francisco, California

Before: GOULD, CLIFTON, and WATFORD, Circuit Judges.

Robert Norton appeals the district court's order granting summary judgment

in favor of PHC-ELKO, Inc., on Norton's Americans with Disabilities Act (ADA),

42 U.S.C. §§ 12112, 12203, Age Discrimination in Employment Act (ADEA), 29

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

U.S.C. § 626 *et seq.*, breach of contract, and breach of the implied covenant of good faith and fair dealing claims.

We affirm the district court's grant of summary judgment. Norton did not establish a genuine issue of material fact that his former employer's proffered reason for firing him—that he improperly shaved time off of his employees' time records—was pretext. Norton also did not establish any genuine issue as to his status as an at-will employee.

The parties agree that the burden shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to both Norton's ADA and ADEA claims. Under the *McDonnell Douglas* framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. 411 U.S. at 802. If the employer articulates a legitimate, nondiscriminatory reason for the action, the burden shifts back to the plaintiff to establish that the stated reason for the adverse action "was in fact pretext." *Id.* at 804.

Norton's ADA retaliation and discrimination claims fail because he cannot show that the Hospital's proffered reason for firing him was pretext. As evidence of pretext Norton cites the following: three statements made by Gene Miller, the

Hospital's Chief Executive Officer, that did not explicitly reference Norton's age or disability; purported comparator evidence; the fact that he was never confronted with specific time card edits or the results of the investigation; Norton's assertion that two Hospital employees overstated their case when they declared under oath that "Norton admitted that he had been shaving his employees' time and that he had done so without their knowledge or permission," that he believed he was following company policy and the issue of Norton's time card editing had been successfully addressed with the Hospital's Human Resources Director; and that other directors were counseled not to do time card edits anymore.

Norton's evidence does not create a genuine issue of material fact that the Hospital's proffered reason for firing him was pretext. Norton cited two statements from Miller without providing the context or the content of the conversations that prompted them. The final statement—that Miller told Norton the Hospital did not want people like Norton around—was said in the context of Miller being fired for what the Hospital believed to be unlawful time shaving.

Norton's comparator evidence is also not persuasive. The one employee Norton identified by name who engaged in the same time editing as Norton was his subordinate. She was not similarly situated to Norton and not a valid comparator. *See Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) ("Employees

in supervisory positions are generally deemed not to be similarly situated to lower level employees."). The "other directors" who engaged in time card editing did so in ways that were substantially different from Norton, both in frequency and reason for editing. The Hospital appropriately found that their editing did not constitute misconduct. These employees were neither similarly situated nor valid comparators. *See Vasquez*, 349 F.3d at 641 (holding employees were not similarly situated when they "did not engage in problematic conduct of comparable seriousness"). Even assuming that the behavior of the other directors was misconduct, we "distinguish[] misconduct by one employee from misconduct by another employee on the basis of whether it prompted complaints or consternation by other employees." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1160 (9th Cir. 2010). Complaints were lodged against only Norton. Norton's other evidence is primarily comprised of conclusory and self-serving allegations that are insufficient to survive summary judgment. *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). Norton's personal belief as to the propriety of his actions does not create a genuine issue of material fact. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028–29 n.6 (9th Cir. 2006). Finally, that after his termination other directors were counseled not to edit time records, and that the Hospital paid Dietary Department employees for the

shaved time, support the Hospital's proffered reason for firing Norton. Norton did not create a genuine issue of material fact as to pretext.

The district court also properly granted summary judgment on Norton's ADEA discrimination claim because Norton similarly did not create a genuine issue as to pretext. Norton relied primarily on the same evidence to establish pretext for his ADEA claims as he did for the ADA claim. For the reasons stated above, that evidence does not defeat summary judgment. He also asserts that "[o]thers in Norton's age bracket were treated poorly." However, Norton does not provide the ages of these "others," nor does he give specific evidence of how they were "treated poorly." These uncorroborated, self-serving, conclusory statements do not create a genuine issue of material fact as to pretext. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). The district court therefore properly granted summary judgment to PHC-ELKO, Inc.

Finally, Norton argues that the Hospital breached his employment contract and violated the implied covenant of good faith and fair dealing. Norton argues that his original offer letter, the Employee Handbook, and the Hospital's use of the Handbook in his discharge decision, create a genuine dispute of material fact as to whether he had an employment contract with the Hospital. Norton's argument fails. First, the disclaimer in his offer letter, "[n]either this letter or any other

document, nor any of our previous or later conversations, are intended to be an employment contract expressed or implied," refers to documents and discussions that may occur in the future, after he has accepted employment. The Supreme Court of Nevada has held that similar language represents at-will language. *See Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 554–55 (Nev. 1995). Second, the policies and clauses outlined in the Employee Handbook do not include promissory language that created an implied employment contract. *See, e.g.*, *D'Angelo v. Gardner*, 819 P.2d 206, 210–11 (Nev. 1991). Finally, the Handbook contains a disclaimer reinforcing that employees are at-will and the Handbook does not create an implied employment contract. Because there is a disclaimer and no contradicting promissory language, the Handbook does not create an implied contract or otherwise alter Norton's at-will employment status. *See Sw. Gas Corp. v. Vargas*, 901 P.2d 693, 698 (Nev. 1995).

**AFFIRMED.**