*1315 OPINION
By the Court,
Shearing, J.:
Robert L. Allum was a loan officer for Valley Mortgage Company (“VMC”). He alleges that Valley Bank of Nevada (“Valley”) created VMC,
for the purpose of transferring funds from the regulated bank to the unsupervised exempted mortgage company to enable the Defendant, Valley Mortgage Company, to make loans to selected persons without adhering to the ordinary underwriting criteria, banking regulations and loan loss reserve requirements for loans made by the Defendant, Valley Bank of Nevada.
In early 1989, Allum claims to have discovered that a number of VMC loans violated rules and regulations of the Federal Housing Administration (“FHA”). He contends that his supervisors threatened to discharge employees who refused to become involved in these loans. Allum reported his findings to the management of VMC, who promptly prohibited him from participating in certain transactions.
Allum alleges that he disapproved other loans he believed to be in violation of FHA rules, only to have his decisions overturned by Daniel Ryssman, VMC’s vice-president. Allum claims Ryssman would fabricate necessary information to make it appear that the loans met FHA requirements.
In July of 1989, Allum reported specific rule violations directly to the FHA. He claims that, as a result, the FHA audited VMC’s Reno office and issued a report ordering termination and rescission of one loan agreement. Employees of Valley investigated Allum’s contentions during the first week of April 1990. On April 19, 1990, Allum was terminated.
Respondents claim that Allum was discharged because he was disruptive, failed to follow directions, failed to comply with company policies, and was abusive to other employees.
Allum sued Valley, VMC, Nevada First Development Corporation, Valley Capitol Corporation, Kenneth Callahan (VMC’s president), and Ryssman (hereinafter collectively referred to as “Valley”) for wrongful discharge.
*1316 The jury returned a general verdict in favor of Valley, and judgment was entered in accordance with the jury’s verdict on February 16, 1993. Thereafter, Allum unsuccessfully moved for a judgment notwithstanding the jury’s verdict, as well as for a new trial. Although the district court found one of the contested jury instructions to be improper, it denied Allum’s motion on the ground that the error was harmless. Allum appeals from the district court’s order denying his motion for a new trial.[1]

DISCUSSION

Standard of Review

NRCP 59 provides:
(a) A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds materially affecting the substantial rights of the parties:
(7) Error in law occurring at the trial and objected to by the party making the motion; ....
“The decision to grant or deny a motion for a new trial rests within the sound discretion of the trial court and will not be disturbed on appeal absent palpable abuse.” Pappas v. State, Dep’t Transp., 104 Nev. 572, 574, 763 P.2d 348, 349 (1988). Having considered the parties’ briefs and having had the benefit of oral argument of counsel, we conclude that the district court abused its discretion in denying Allum’s motion for a new trial.

Introduction

An employer commits a tortious discharge by terminating an employee for reasons that violate public policy. Western States Minerals Corp. v. Jones, 107 Nev. 704, 712, 819 P.2d 206, 212 (1991). The district court in this case noted that
this state has a strong public policy in ensuring that banks within this state comply with FHA mortgage-related regulations. Bank employees and officers should be encouraged to report such illegal activity in this area, and the retaliatory termination of an employee or officer who does so, or who *1317 refuses to engage in such illegal activity, is in violation of the public policy of this state.
Generally stated, the jury below was instructed that Allum could recover for tortious discharge if he proved that he was discharged in retaliation for (1) whistleblowing, or (2) refusing to participate in illegal • conduct. Allum takes issue with the trial court’s tortious discharge instructions, the characterization of his employment contract, and the manner in which the jury was polled after it rendered the verdict.

At-Will Employment Contract

This court has held that the type of employment — either at-will or by contract — is immaterial to a tortious discharge action. See D’Angelo v. Gardner, 107 Nev. 704, 718, 819 P.2d 206, 216 (1991) (holding that a claim for tortious discharge “stands by itself” and is not dependent on a contract of continued employment between the parties). In this case, both parties agree that whether the employment contract was at-will is irrelevant. Thus, because the type of employment contract does not affect our analysis and because there is no actual controversy between the parties on this issue, we will not comment further. See Applebaum v. Applebaum, 97 Nev. 11, 12, 621 P.2d 1110, 1110 (1981) (this court will not render advisory opinions on abstract questions); see also Nev. Const., art. 6 § 4.

Tortious Discharge

Allum pressed two separate claims for retaliatory discharge. First, that he was fired for “whistle-blowing”; second, that he was fired for refusing to participate in “suspected” illegal conduct. The court gave separate instructions on these two theories (nos. 25[2] and 26[3], discussed below). Instruction 25 conditioned *1318 recovery on proof that Allum was discharged because of whistle-blowing activities regarding conduct that was, in fact, illegal; instruction 26 conditioned recovery on proof that Allum was discharged because of his refusal to participate in illegal activities.

Mixed Motives

At trial, Allum asked the court to instruct the jury that, to establish the claim of retaliatory discharge, he must prove that he was discharged, in part, because he made the report. The court rejected Allum’s proposal and instructed the jury that Allum must prove that he was fired “because he made the report,” implying that the sole reason for discharge was his whistleblowing activities. On appeal, Allum contends that he was entitled to recovery if he was fired, “at least in part,” for “whistle-blowing” and/or refusal to participate in his employer’s illegal activities. Thus, Allum argues that the case should be remanded because a “mixed motives” analysis, one occasionally invoked by federal district courts in discrimination cases brought under Title VII of the Civil Rights Act of 1964, should apply generally to retaliatory discharge cases brought under state law.
In a Title VII mixed motives case, the plaintiff can recover upon a showing that the adverse employment decision resulted from a mixture of legitimate reasons and prohibited discriminatory motives. See Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989); see also Luciano v. Olsten Corp., 110 F.3d 210, 217-18 (2d Cir. 1997); Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1110 (9th Cir. 1991). To succeed on a mixed-motives theory, the plaintiff must demonstrate that “it is more likely than not that a protected characteristic ‘played a motivating part in [the] employment decision.’’’ Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1110 (9th Cir. 1991) (citing Price Waterhouse v. Hopkins, at 244, 247 n.12). The burden then shifts to the defendant employer to show that it would have made the same decision absent the unlawful motive. Id.
There is no Nevada authority addressing whether, outside the realm of Title VII, employees may recover if retaliation was merely one factor in the employer’s decision to terminate. Thus, we examine case law from other jurisdictions.
*1319 In Rozier v. St. Mary’s Hospital, 411 N.E.2d 50, 51 (Ill. Ct. App. 1980), plaintiff alleged that she was fired for reporting “various abuses and improper conduct.’ ’ The court granted the defendant’s motion for summary judgment, in part, because it was
of the opinion that the discharged employee’s action should not be allowed where, as here, plaintiff’s own discovery deposition reveals a legitimate reason for her discharge. . . . [W]e believe plaintiff’s employer was justified in concluding that plaintiff had lied with respect to job-related matters and in terminating her employment on that basis.
Id. at 54.
In Thompson v. Abbott Laboratories, 549 N.E.2d 1295 (Ill. Ct. App. 1990), plaintiff argued that she was entitled to a “mixed motives” instruction, pursuant to which she need only prove that her pursuit of worker’s compensation benefits was a motivating factor in her discharge. Id. at 1303, 1307. The appellate court affirmed the trial court’s refusal to grant such an instruction. Id. In a concurring opinion, Judge Reinhard explained that
giving a mixed motive instruction, . . . would effectively expand the tort by allowing plaintiff to prove retaliatory discharge even though an employer terminated the plaintiff for a legitimate reason .... [instructing on mixed motive would have a devastating impact on the at-will doctrine. Rather, I believe the current law requiring the plaintiff to establish causality strikes the appropriate balance between an employee’s right not to be fired in contravention of a clearly mandated policy and an employer’s right to discharge an employee at will for any reason or no reason.
Id. at 1309 (Reinhard, J. concurring).
In Aiken v. Business and Industry Health Group, Inc., 886 F. Supp. 1565 (D. Kan. 1995), the court held that a “plaintiff must show he was discharged because he reported to superiors or to public authorities serious misconduct . . . .” Id. at 1571 (citing Loomstein v. Medicare Pharmacies, Inc., 750 S.W.2d 106, 112 (Mo. Ct. App. 1988), Boyle v. Vista Eyewear, Inc., 700 S.W.2d 859, 878 (Mo. Ct. App. 1985), and Hansome v. Northwestern Cooperage Co., 679 S.W.2d 273, 275 (Mo. 1984)).
Although this court has not specifically addressed whether a mixed motives analysis applies in tortious discharge cases outside of Title VII, we take this opportunity to adopt the approach followed by other states and federal courts that have considered the issue. We hold that recovery for retaliatory discharge under state law may not be had upon a “mixed motives” theory; thus, a *1320 plaintiff must demonstrate that his protected conduct was the proximate cause of his discharge.[4] Here, the district court instructed the jury that Allum was required to prove, by a preponderance of the evidence, that he was discharged because he made the report to the FHA. Therefore, the jury was properly instructed on this issue.
We note that the case at bar involves tortious discharge — it is not a discrimination case. Even if it were, judicial application of a “mixed motives” analysis occurs in only a “small subset of all employment discrimination cases in which the employer may have had more than one motive.” Miller v. Cigna Corp., 47 F.3d 586, 597 n.9 (3d Cir. 1995). Further, we conclude that the use of the “mixed motives” concept in the context of wrongful termination cases would have the effect of undermining the Nevada legislature’s intent in creating the “at-will” doctrine. Accordingly, until the legislature chooses to intervene, we decline to adopt a “mixed motives” approach to tortious discharge cases.

Proof of Valley’s Participation in Illegal Conduct

Allum also argues that instructions no. 25 (defining the whistle-blowing claim) and no. 26 (defining the refusal to participate in illegal conduct claim) contained errors of law because recovery was conditioned on proof that VMC, in fact, participated in illegal misconduct. Valley argued at trial and maintains on appeal that public policy is not served by reporting conduct which is not illegal. Allum contends that he should only have been required to prove that he “suspected” the defendants were engaging in illegal activity. We have not, as yet, specifically addressed this issue.
In Wiltsie v. Baby Grand Corp., 105 Nev. 291, 774 P.2d 432 (1989), we stated the following:
We believe that whistleblowing activity which serves a public purpose should be protected. So long as employees’ actions are not merely private or proprietary, but instead seek to further the public good, the decision to expose illegal or unsafe practices should be encouraged.
Id. at 293, 774 P.2d at 433 (quoting Wagner v. City of Globe, 722 P.2d 250, 257 (Ariz. 1986)). In Sands Regent v. Valgardson, 105 Nev. 436, 777 P.2d 898 (1989), this court stated “that public policy tortious discharge actions are severely limited to those rare and exceptional cases where the employer’s conduct violates *1321 strong and compelling public policy.” Id. at 440, 777 P.2d at 900 (footnote omitted).
Allum relies on Palmer v. Brown, 752 P.2d 685 (Kan. 1988), in which the Kansas Supreme Court held:
Public policy requires that citizens in a democracy be protected from reprisals for performing their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare. Thus, we have no hesitation in holding termination of an employee in retaliation for the good faith reporting of a serious infraction of such rules, regulation, or the law by a coworker or an employer ... is an actionable tort.
Id. at 689-90. That court also refers to good faith reporting as that not motivated by malice, spite, jealousy or personal gain as opposed to a good faith belief that an infraction has occurred. Id. at 690. Other jurisdictions have also considered this issue.
In McQuary v. Bel Air Convalescent Home, Inc., 684 P.2d 21 (Or. Ct. App. 1984), a nurse was fired after she threatened to report that her employer had abused a patient. The court stated:
[W]e turn to the question whether she must prove that [the defendant’s] actions in fact constituted “patient abuse” in the broad sense of the term, or must only show that she in good faith believed that they did .... We . . . hold that an employe [sic] is protected from discharge for good faith reporting of what the employe [sic] believes to be patient mistreatment to an appropriate authority.
Id. at 23-24 (footnote omitted); see also Melchi v. Burns International Security Services, 597 F. Supp. 575 (E.D. Mich. 1984) (citing legislation prohibiting termination for reporting suspected violations of law (M.C.L. § 15.361)).
The reasoning espoused by the court in McQuary supports this court’s goal expressed in Wiltsie, to encourage the decision to expose illegal or unsafe practices. Wiltsie, 105 Nev. at 293, 774 P.2d at 433. In McQuary, the Oregon court also stated the following:
We are required to choose between competing social values: Either plaintiff must act at her peril in making a complaint, risking her job if the complaint later turns out to be unfounded, or the employer must act at its peril in firing her, risking damages if she turns out to have acted in good faith. On balance, we believe that the social harm from reporting in good faith a complaint that may turn out, after investigation, to be unfounded is potentially far less than the harm of not reporting a well-founded complaint for fear of the consequences.
*1322 Id. at 23-24.
Arizona appears in agreement. In Wagenseller v. Scottsdale Memorial Hospital, 710 P.2d 1025 (Ariz. 1985), Wagenseller claimed she was fired for refusing to participate in activities which “arguably” would have violated the Arizona indecent exposure statute. Id. at 1035 (emphasis added). That court held that “the termination for refusal to commit an act which might violate A.R.S. § 13-1402 may provide the basis of a claim for wrongful discharge.” Id. (emphasis added).
Valley relies on Wagner v. City of Globe, 722 P.2d 250, 257 (Ariz. 1986) (cited with approval in Wiltsie, 105 Nev. 291, 774 P.2d 432), for the proposition that the plaintiff must show that a law has actually been violated. In that case, the Supreme Court of Arizona held that,
[t]he relevant inquiry is not limited to whether any particular law or regulation has been violated, although that may be important, but instead emphasizes whether some “important public policy interest embodied in the law” has been furthered by the whistleblowing activity.
Wagner, 722 P.2d at 257. Contrary to Valley’s assertion, case law suggests that while an actual violation is sufficient in a claim for retaliatory discharge, it is not essential. See generally Wagenseller (holding that employee may refuse to participate in behavior which violates public policy, even though no technical violation of the law results). We hold that instructions no. 25 and no. 26 were given in error insofar as they required proof that the defendants actually participated in illegal conduct. The district court should have required Allum to show that he reasonably suspected, in good faith, that Valley participated in illegal conduct. We conclude. that the district court abused its discretion in denying Allum’s motion for a new trial with respect to his contentions that instructions no. 25 and no. 26 were given in error. We therefore reverse the district court’s order and remand for a new trial with a proper instruction specifying that Allum is required to show only that he reasonably suspected, in good faith, that Valley participated in illegal conduct.

Refusal to Participate in Illegal Conduct

Allum submits that jury instruction no. 26 (defining the refusal to participate in illegal conduct claim) contained one additional error. Allum argues that he was not obligated to prove he was given an express choice between participating in illegal conduct or losing his job, or that he was told he must participate. Because this court has not addressed whether an employee’s termination *1323 for refusal to participate in his employer’s illegal activities violates Nevada public policy, we will confront that issue now.[5]
In Western States Minerals Corp. v. Jones, 107 Nev. 704, 719, 819 P.2d 206, 216 (1991), this court held that a claim for tortious discharge should be available to an employee who was terminated for refusing to engage in unsafe conduct at his employer’s request. A claim for tortious discharge should also be available to an employee who was terminated for refusing to engage in conduct that he, in good faith, believed to be illegal.[6] “Any other conclusion . . . would encourage unlawful conduct by employers and force employees to either consent and participate in violation of the law or risk termination.” Vermillion v. AAA Pro Moving & Storage, 704 P.2d 1360, 1362 (Ariz. 1985).
Allum claims that this court should recognize the tortious discharge cause of action even if Valley did not expressly inform him that he would be fired if he refused to participate.
In its order denying Allum’s motion for a' new trial, the district court noted that the precise language used in jury instruction no. 26 was technically too narrow.[7] The court noted that the problem with Valley’s position was
that an employee asked to perform illegal activities is not privy to the intentions of his or her employer. Employees generally recognize that the refusal to act as requested by an employer risks termination for insubordination. The employer need not explicitly present the employee with the . . . choice of acting illegally or being terminated; the employee knows the likely consequences of refusing to perform as requested.
Several jurisdictions recognize a cause of action for wrongful discharge where the plaintiff claims he was terminated in retaliation for conduct either required or prohibited by law. These courts do not require the plaintiff to allege that he was given a choice between his job and participating in the illegal conduct. See Dugan v. Bell Telephone, 876 F. Supp. 713 (W.D. Pa. 1994); *1324 Perry v. Hartz Mountain Corp., 537 F. Supp. 1387, 1389 (S.D. Ind. 1982); Shearin v. E.F. Hutton Group, Inc., 652 A.2d 578, 585-89 (Del. 1994); Remington Freight Lines, Inc. v. Larkey, 644 N.E.2d 931, 937 (Ind. Ct. App. 1994); Winkleman v. Beloit Memorial Hospital, 483 N.E.2d 211 (Wis. 1992); Sheets v. Teddy’s Frosted Foods, Inc., 427 A.2d 385 (Conn. 1980).
We agree that the district court erroneously required Allum to show that he was given a choice to either participate in the conduct or face termination. However, we conclude that the error was not harmless and the district court should have granted a new trial in light of the error. A claim for tortious discharge should be available to an employee who was terminated for refusing to engage in conduct that he, in good faith, reasonably believed to be illegal. Accordingly, we reverse the district court’s order and remand for a new trial with a proper instruction.

Jury Poll

“ [I]n civil cases, if three fourths of the Jurors agree upon a verdict it shall stand and have the same force and effect as a verdict by the whole Jury. ...” Nev. Const., art. 1, § 3. “[A]ny party may request that the jury be polled. ... If more than one-fourth of the jurors disagree [with the verdict as read], the jury shall be again sent out; but if no disagreement is expressed, the clerk shall fully record the verdict . . . and the jury shall be discharged . . . .” NRS 16.190.
In this case, after the jury read the verdict “in favor of the Defendants and against the Plaintiff,’ ’ the court asked each juror, “is this your verdict as read?” One of the jurors said that it was not. Four of the jurors responded that it was. One juror responded, “[wjith reservations. I don’t feel well about it, but, yes.” Another juror answered, “yes, with reservations,” and one juror answered, “[w]ith certain reservations.”
Allum claims that a new trial should be ordered because four of the eight jurors expressed some disagreement. Thus, Allum alleges, under NRS 16.190, the jury should have been sent out for further deliberations. Valley contends that since Allum did not object to the manner in which the jury was polled at trial, he should be precluded from appealing this issue.
“[F]ailure to object to asserted errors at trial will bar review of an issue on appeal.” McCullough v. State, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983); see also Commonwealth v. Jackson, 324 A.2d 350, 353 (Pa. 1974) (one cannot be heard to challenge unanimity of verdict where he fails to question the jurors’ answers or *1325 requests that jurors be further interrogated); Scott v. Chapman, 71 Nev. 329, 331, 291 P.2d 422, 423 (1955).
In this case, after the jury was polled, the judge thanked the jurors and indicated he would order that “the verdict be recorded on the minutes of the court at this time.’ ’ At that point, Allum’s attorney did not object to the court’s decision not to send the jury out again. In addition, Allum’s subsequent motion for a new trial did not contest the polling process. Therefore, we conclude that Allum’s failure to object waived any potential error.[8] Finally, the “reservations” as to the verdict did not, in this case, amount to a retraction by the jurors in question.

CONCLUSION

At-Will Employment Status

Whether Allum was employed at-will was not relevant to these claims of retaliatory discharge. Accordingly, we did not comment on the at-will employment issue here.

Mixed Motives

We refuse to apply a mixed motives analysis to tortious discharge cases. We hold that the jury was instructed properly that Allum had the burden of proving, by a preponderance of the evidence, a direct causal connection between his report to the FHA, or his refusal to participate in arguably illegal conduct, and his termination.

Valley’s Participation in Illegal Conduct

We hold that instructions no. 25 and no. 26 were given in error insofar as they required proof that the defendants actually participated in illegal conduct. The district court should have required Allum to show that he reasonably suspected, in good faith, that Valley participated in illegal conduct.

Allum’s Refusal to Participate in Illegal Conduct

The district court also erred in instructing the jury that Allum was required to show he was explicitly given a choice between participating in illegal conduct and losing his job. We conclude that the error was not harmless and the district court should have granted a new trial in light of the error.

Jury Poll

Allum waived any objection he had to the manner in which the *1326 jury was polled because he failed to object at trial. Thus, we dismiss Allum’s jury poll argument.
Accordingly, we reverse the district court’s order denying Allum’s motion for a new trial and remand this matter to the district court. On remand, the district court shall conduct a new trial in accordance with the conclusions reached in this opinion.
Rose and Young, JJ., concur.

Although Allum also purports to appeal from that portion of the district court’s order denying his post-judgment motion for judgment notwithstanding the verdict, we have previously explained that no such appeal may be taken. See Uniroyal Goodrich Tire v. Mercer, 111 Nev. 318, 320 n.1, 890 P.2d 785, 787 n.1 (1995).

 That instruction states:
In order to establish the claim of retaliatory discharge, plaintiff must prove each of the following elements:
1. That defendants participated in illegal conduct;
2. That an important public policy violation was embodied in the law that was broken;
3. That plaintiff reported the illegal conduct to the FHA; and
4. That plaintiff was discharged from his employment because he made the report to the FHA.

 That instruction states:
In order to establish the claim, plaintiff must prove each of the following elements:
1. Plaintiff was given the choice between participating in illegal conduct or losing his job;
*1318 2. An important public policy violation was embodied in the illegal conduct which plaintiff was told he must participate in;
3. Plaintiff refused to participate in the illegal conduct; and
4. Defendants discharged plaintiff from employment because he refused to participate in the illegal conduct.

 AccordingIy, we conclude that Nev. J. I. 4.04 is appropriate in these cases. It provides:
[The] proximate cause of injury, damages, loss, or harm is a cause which, in natural and continuous sequence, produces the injury, damage, loss, or harm, and without which the injury, damages, loss, or harm, would not have occurred.

 See Schlang v. Key Airlines, Inc., 794 F. Supp. 1493, 1506 (D. Nev. 1992), vacated in part, 158 F.R.D. 666 (D. Nev. 1994).

 The modern trend favors the “right of a discharged employee to bring suit upon a showing that the discharge violated public policy because it was motivated by a desire to punish the employee for failing to cooperate with the employer’s illegal schemes.” Wanda Ellen Wakefield, Annotation, Liability for Discharging At-Will Employee for Refusing to Participate in, or for Disclosing, Unlawful or Unethical Acts of Employer or Coemployees, 9 A.L.R. 4th 329, 333-34 (1981).

 Nonetheless, the court denied Allum’s motion because it determined that the error was harmless.

 Allum’s attorney was unable to appear when the jury read the verdict, but another attorney was present on his behalf. There were no objections made by the substitute attorney.