**Audrey BIELSER, Plaintiff,**

v.

**PROFESSIONAL SYSTEMS CORPORATION, a Delaware Corporation, Defendant.**

**No. CV–N–03–0557ECR.**

United States District Court, D. Nevada.

May 28, 2004.

**1166**

Jeffrey A. Dickerson, Reno, NV, for Plaintiff or Petitioner.

Rew R. Goodenow, Marshall, Hill, Cassas & De Lipkau, Reno, NV, for Defendant or Respondent.

### ORDER

EDWARD C. REED, JR., District Judge.

Our Order (# 16) dated May 25, 2004, is hereby amended to read as follows:

We now consider Defendant Professional Systems Corporation's ("Defendant") Motion to Dismiss or to Change Venue (# 3). Plaintiff Audrey Bielser ("Plaintiff") filed an opposition (# 8) to the motion (# 3) and Defendant replied (# 9). We also consider Defendant's Motion for Summary Judgment (# 11). Plaintiff opposed (# 13) this motion as well and Defendant filed a reply (# 14). For the reasons stated below, Defendant's Motion for Summary Judgment (# 11) will be granted.

## I. Background

Plaintiff began work as general manager of a facility owned by Defendant in April of 2002. Defendant is in the business of address cleansing, printing and mailing services, and document management. The parties agree that plaintiff was an at-will employee of Defendant.

Plaintiff alleges that during her employment with Defendant she discovered Defendant was fraudulently and illegally overcharging one of its clients. Plaintiff contends that she brought this issue to the attention of Defendant's management, including Defendant's Chief Executive Officer. In retaliation for reporting this allegedly fraudulent and illegal conduct, Plaintiff claims her employment with Defendant was terminated.

Plaintiff's complaint alleges one state law cause of action for tortious discharge in violation of public policy. Defendant seeks summary judgment on this claim on the basis that Plaintiff's reporting of the alleged conduct to individuals within the company is insufficient under Nevada law to maintain a claim for tortious discharge.

## II. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, deposi-

tions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Summary Judgment is not proper if material factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999). As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

## III. Discussion

### A. Jurisdiction and Applicable Law

We have diversity jurisdiction over this state law cause of action pursuant to 28 U.S.C. § 1332. Hence, we are obligated to apply Nevada state law, as determined by reference to the decisions of the Supreme Court of Nevada. *Mirch v. Frank*, 295 F.Supp.2d 1180, 1183 (D.Nev. 2003).

## B. Tortious Discharge

Under Nevada law, employment contracts are presumed to be at-will, and an employer may fire an employee for any reason or for no reason at all. *Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882, 884–85 (1999) (en banc). An exception to this general rule has been carved out, however, where an employer terminates an employee in a manner violative of public policy. *Id.* In such a case the terminated employee may bring a cause of action for tortious discharge. *Id.*

The Supreme Court of Nevada first introduced this public policy exception in *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984) (per curiam). In *Hansen*, the plaintiffs were terminated in retaliation for filing workmen's compensation claims. *Id.*, 675 P.2d at 395. The court held that a retaliatory discharge of an employee in reaction to the filing of a workmen's compensation claim is actionable in tort. *Id.* at 397. This rule, the court reasoned, would advance the State's public policy of protecting workers injured on the job. *Id.* at 396–97. Since deciding *Hansen*, the Supreme Court of Nevada has extended the public policy exception to cover varying circumstances. These circumstances include, *inter alia*, the termination of an employee for performing jury duty, refusing to engage in activities violative of the law or another public policy of the state, *D'Angelo v. Gardner (Western States v. Jones)*, 107 Nev.704, 819 P.2d 206, 212 (1991),[1] and exposing the illegal activities of her employer, referred to as whistleblowing, *Wiltsie v. Baby Grand Corp.*, 105 Nev. 291, 774 P.2d 432 (1989) (per curiam).

To prevail on a tortious discharge claim "the employee must be able to establish that the dismissal was based upon the employee's refusing to engage in conduct that was violative of public policy or upon the employee's engaging in conduct which public policy favors." *Bigelow v. Bullard*, 111 Nev. 1178, 901 P.2d 630, 632 (1995). At base, a tortious discharge claim seeks to remedy the "wrongful, usually retaliatory, interruption of employment by means which are deemed to be contrary to the public policy of [the] state." *Western States*, 819 P.2d at 216.

As discussed in more detail below, Plaintiff's cause is for tortious discharge in retaliation for protected whistleblowing activity. The Supreme Court of Nevada first recognized this claim in *Wiltsie v. Baby Grand Corp.*, 105 Nev. 291, 774 P.2d 432 (1989) (per curiam). In that case, the plaintiff, a poker room manager, alleged that he was fired for reporting the illegal conduct of his supervisor to his employer. *Id.*, 774 P.2d at 433. The court held that "firing an at-will employee for reporting illegal conduct of his employer violates an established public policy of [Nevada]," namely, the enforcement of the law. *Id.*

Having established that a tortious discharge claim can be maintained in the whistleblowing context, however, the court went on to hold that the plaintiff did not meet the requirements for such a claim. Specifically, the court held that an employee must expose her employer's illegal activity to the proper authorities to be entitled to protection. *Id.* The court explained that whistleblowing activity is entitled to protection only when the employee's actions "are not merely private or proprietary, but instead seek to further the public good." *Id.* (quoting *Wagner v. City of*

---

**1.** In *D'Angelo v. Gardner (Western States v. Jones)*, the court consolidated two cases: *D'Angelo v. Gardner* and *Western States Minerals Corp. v. Jones*. Because it is the facts and holding of the *Western States* case that are relevant to our analysis, we will refer to the case as *Western States*. See *Bigelow v. Bullard*, 111 Nev. 1178, 901 P.2d 630, 631 n. 2 (1995).

*Globe,* 150 Ariz. 82, 722 P.2d 250, 257 (1986)). Because the plaintiff "chose to report the activity to his supervisor rather than the appropriate authorities," the court held that "he was merely acting in a private or proprietary manner." *Id.* Hence, the plaintiff was not entitled to protection.

## IV. Analysis

█ The parties do not dispute the facts in this case. The sole issue presented to us is whether the evidence supports Plaintiff's claim of tortious discharge based on protected whistleblowing activity. After reviewing the papers and evidence on file, it is clear that *Wiltsie* is directly on point and bars Plaintiff's claim. Therefore, summary judgment will be granted in favor of Defendant.

To begin with, Plaintiff's complaint and the evidence filed by Defendant show that Plaintiff's allegations stem from alleged whistleblowing activity. In Paragraph 5 of her Complaint, Plaintiff alleges that she "*pointed out* fraudulent and potentially illegal activities on the part of the company to management, including the CEO, in November of 2002 and on the day before her termination." (Compl., Ex. B to Def.'s Notice of Removal (# 2), at ¶ 5 (emphasis added).) Also, in Plaintiff's Answers to Defendant's First Set of Interrogatories, Plaintiff stated, "Plaintiff *told* Mike [Defendant's Director of I.T.] that she could not believe that Joe [Defendant's CEO] was cheating his largest client. Specifically, Plaintiff *advised* that NCO [Defendant's customer] was being defrauded." (Ex. B to Def.'s Motion for Summary Judgment, at 2 (emphasis added).) Plaintiff also said that she "*exposed* these

wrongdoings to management including Mr. Greco [Defendant's CEO]." (*Id.* at 3 (emphasis added).) Similarly, in *Wiltsie* the plaintiff "reported illegal conduct of his supervisor to [his employer]." 774 P.2d at 433. It is also significant that Plaintiff used the word "exposed" to describe her conduct. As the court in *Wiltsie* held, it is "the decision to *expose* illegal or unsafe practices" that the public policy exception for whistleblowing seeks to protect. *Id.* (quoting *Wagner,* 722 P.2d at 257) (emphasis added). Clearly, then, Plaintiff's claim is based on whistleblowing activity, and the *Wiltsie* holding governs this case.

█ Plaintiff spoke out to her managers concerning Defendant's allegedly illegal activity,[2] informing Mike Hennessy, Defendant's Director of I.T., and Joe Greco, Defendant's CEO, that Defendant was defrauding one of its clients. As the Supreme Court of Nevada explained, such internal reporting or exposure is merely private and proprietary and is not sufficient to maintain a tortious discharge claim based on whistleblowing. *Wiltsie,* 774 P.2d at 433–34. Plaintiff's termination, therefore, did not offend the public policy of Nevada and her tortious discharge claim must fail.

*Schlang v. Key Airlines, Inc.,* 794 F.Supp. 1493 (D.Nev.1992), *vacated in part on other grounds by* 158 F.R.D. 666 (D.Nev.1994), a decision by another court in this District, lends further support to our analysis. The plaintiffs in *Schlang* were airline pilots employed by the defendant airline. *Id.* at 1495–96. Upon their terminations, the plaintiffs brought numerous claims against their former employer, including for tortious discharge based on alleged whistleblowing. *Id.* According to

---

**2.** Whether or not Defendant's alleged conduct was in fact illegal has no bearing on our analysis. In *Allum v. Valley Bank of Nevada,* 114 Nev. 1313, 970 P.2d 1062, 1067 (1998), the court held that an actual violation of the

law by an employer is not essential in a tortious discharge case. An employee's reasonable, good faith suspicion that the employer has engaged in illegal conduct is sufficient. *Id.*

the plaintiffs, they reported violations by their employer of certain Federal Aviation Regulations ("FAR") (1) to the National Mediation Board; (2) to Air Traffic Control ("ATC"); and (3) by recording the violations in their aircraft log books. *Id.* at 1503. Applying *Wiltsie*, the court held that this alleged reporting was insufficient to support a tortious discharge claim because the plaintiffs did not report the alleged violations directly to the federal body charged with enforcing the FARs, the Federal Aviation Administration ("FAA").[3] *Id.* at 1503–05. Most relevant to the present case, the court found unpersuasive the plaintiffs' argument that by entering the alleged FAR violations in the aircraft log books the plaintiffs satisfied *Wiltsie* because their employer was required to inspect the log books and report FAR violations to the FAA. *Id.* at 1504. The court explained that "*Wiltsie* clearly holds that a complaint registered with the employer is a private or proprietary action that is not entitled to public policy protection." *Id.* at 1504. Consequently, any reports not made directly to the FAA were found to be deficient under *Wiltsie*. *Id.*

In light of the above cases, it is clear that Plaintiff's internal reporting of Defendant's alleged illegal activity cannot support a tortious discharge claim under Nevada law. Nonetheless, Plaintiff points to several decisions of the Supreme Court of Nevada which she claims hold that internal reporting alone can implicate the public policy exception to the at-will employment rule. These decisions, however, are not applicable to the present case because they address terminations based on an employee's refusal to engage in activity violative of Nevada's public policy, not whistleblowing.

Plaintiff relies heavily on *Bigelow v. Bullard*, 111 Nev. 1178, 901 P.2d 630 (1995). In *Bigelow*, the plaintiffs alleged that they were discharged for failing to engage in illegal conduct, namely, discrimination against African–Americans. In analyzing the plaintiffs' claims, the court noted the lack of evidence that the defendant terminated the plaintiffs for this reason. *Id.*, 901 P.2d at 632. The only evidence presented showed that upon witnessing the discriminatory behavior of his fellow employees, one of the plaintiffs said to a co-worker, "blacks have rights too." *Id.* In discussing this statement, the court said, "[i]t may be true that [plaintiff] apparently felt some disapproval of the way his employer was treating African–Americans and, in an aside, expressed his disapproval to one of his co-workers; but this expression of disapproval was made to a co-worker, *and not to the company or its management.*" *Id.* at 633. Plaintiff latches on to such language as indicating that an internal report of illegal conduct to one's employer is sufficient to establish a case of tortious discharge based on whistleblowing. However, in the next sentence the court explained that the plaintiff's comment, which was made to a co-worker, was "a far cry from his having refused to carry out directions that were violative of public policy." *Id.* From this statement, it is clear that the court was focused on whether the plaintiff refused to engage in illegal conduct.[4] That is not the issue presented in the present case.

---

**3.** The court did not decide whether a report to ATC, an arm of the FAA, would be sufficient to satisfy *Wiltsie* because the facts did not support the plaintiffs' claim that they indeed reported violations of the FARs to the ATC. *Schlang*, 794 F.Supp. at 1505–06.

**4.** The court noted the lack of evidence that the defendant directed the plaintiffs to engage in the discriminatory activity. *Bigelow*, 901 P.2d at 632. Nonetheless, it is clear that the court analyzed the plaintiffs' allegations as presenting a claim for tortious discharge for refusing to violate the law. *See Chavez v. Sievers*, 118 Nev. 288, 43 P.3d 1022, 1026 n. 9 (2002) (en banc) (explaining that, "*Bigelow* concerned an employee's refusal to partici-

The dissent in *Bigelow* argued that the statement "blacks have rights too" should have been considered an objection to the defendant's discriminatory conduct sufficient to implicate the public policy exception. *Id.* at 637–38. Addressing this argument, the court countered that,

> [m]erely "objecting" to company policies, especially when the objection is made in the form of an aside to a fellow employee rather than in the form of a protest or grievance to management, is not the kind of conduct, the kind of public policy-related confrontation between employer and employee, that can provide a basis for a tortious discharge action.

*Id.* at 635. Although the court did not draw this parallel, the above statement is consistent with *Wiltsie's* holding that an internal exposure of, or objection to, illegal conduct does not constitute protected whistleblowing.

Consequently, *Bigelow* offers no help to Plaintiff for two reasons. First, as mentioned the plaintiffs' claims in *Bigelow* were grounded on alleged refusals to participate in illegal activity. As demonstrated above, Plaintiff's claim in this case is based on whistleblowing, not a refusal to violate public policy. Second, even if the present case was based on a failure to engage in illegal activity, the *Bigelow* court made clear that a mere objection to company policies is not sufficient to support such a tortious discharge claim. There must be some action by the employee amounting to "a refusal to violate the public policy of [Nevada]." *Id.* at 634. In the present case, Plaintiff did no more than bring her employer's allegedly fraudulent conduct to management's attention, and may have voiced an objection to the conduct. There is nothing in the record indicating that Plaintiff's statements might be considered

a refusal to engage in the fraudulent conduct herself.

Plaintiff also relies on *Western States*, 819 P.2d at 206, wherein the Supreme Court of Nevada held as protected under the public policy exception an employee's refusal to work near cyanide because of an open surgical wound. As with *Bigelow*, *Western States* involved a refusal to engage in conduct contrary to public policy, and is not applicable to the present case.

The above discussion reveals the distinction under Nevada law between cases in which an employee is asked by her employer to participate in conduct violative of public policy and those in which the employee merely discovers that her employer is engaged in illegal conduct and reports it to someone. *See Allum v. Valley Bank of Nevada*, 114 Nev. 1313, 970 P.2d 1062, 1066–68 (1998) (recognizing and analyzing separately the plaintiff's two tortious discharge claims: one for whistleblowing and one for refusing to participate in suspected illegal conduct). In the former, it may be sufficient to object to the illegal conduct within the company, but only if such objection amounts to a refusal by the employee to violate the state's public policy. *Bigelow*, 901 P.2d at 634. In the latter, the employee must report the illegal conduct to an appropriate authority outside the company. *Wiltsie*, 774 P.2d at 433. A report made solely to the employee's superior within the company is merely unprotected private or proprietary conduct. *Id.*

This distinction can be attributed to the ends served by each cause of action. As the court made clear in *Wiltsie*, the public policy advanced in the whistleblowing context is the enforcement of the state's laws. *Id.* This public policy is best served when an employee brings her employer's illegal conduct to the attention of the authorities charged with enforcing the particular law at issue. While possibly beneficial in certain circumstances,[5] a report made solely

---

pate in the employer's alleged illegal conduct").

5. For example, the public may well be served by an employee who attempts to dissuade her

to the employer—who may be the very person who has broken the law—may do nothing to vindicate a law that has already been broken. Although this leaves the employee with the difficult choice of either keeping quiet in the face of the illegal conduct or going directly to the authorities, clearly the goal of enforcing the state's laws is best served by requiring the employee to report the illegal activity to the relevant authority outside the company. It is this type of conduct that a tortious discharge claim protects.

On the other hand, in cases such as *Bigelow* and *Western States,* the aim is to avoid penalizing an employee for refusing to engage in conduct that violates the state's public policy. For example, requiring an employee with an open surgical wound to work near cyanide would run counter to the state's policy of providing employees with a safe and healthy working environment. *Western States,* 819 P.2d at 215–17. Likewise, employees should not be forced by their employers to illegally discriminate against minorities. *Bigelow,* 901 P.2d at 630. To promote this policy, an employee must feel free to object when asked, for instance, to work in an unreasonably dangerous area without fear of retaliation from her employer. As a result, an objection made internally to one's employer may be sufficient to support a claim of tortious discharge where the objection amounts to a refusal to violate public policy. *Id.* at 634. In the whistleblowing context the focus is on the exposure of illegal activity whereas in cases like *Bigelow* and *Western States* the focus is on preventing the employee herself from engaging in activity violative of public policy.

To be sure, one can make strong arguments against *Wiltsie's* holding. *See e.g., Liberatore v. Melville Corp.,* 168 F.3d 1326, 1331 (D.C.Cir.1999) (quoting *Belline v. K–Mart Corp.,* 940 F.2d 184, 187 (7th

Cir.1991)) (explaining that "[w]ere the court to agree that discharges from employment in retaliation for internal complaints of law violations are not protected by the public policy exception, it would 'create perverse incentives by inviting concerned employees to bypass internal channels altogether and immediately summon the police' "). Nonetheless, as a United States District Court sitting in diversity, we are obligated to apply the law of Nevada's highest state court, which *Wiltsie* is. *Mirch v. Frank,* 295 F.Supp.2d 1180, 1183 (D.Nev.2003).

## V. Conclusion

In the present case, Plaintiff did nothing more than bring to the attention of her managers conduct which she believed may have been illegal. Under *Wiltsie,* this is not sufficient to maintain a tortious discharge claim. Summary judgment in favor of Defendant is therefore appropriate.

*IT IS, THEREFORE, HEREBY OR-DERED THAT,* as addressed above, Defendant's Motion for Summary Judgment (# 11) is **GRANTED.**

*IT IS FURTHER ORDERED THAT,* in light of this order, Defendant's Motion to Dismiss or to Change Venue (# 3) is **DENIED** as moot.

The Clerk shall enter an **AMENDED JUDGMENT** accordingly.

employer from engaging in illegal conduct not

yet undertaken.