EDWARD D. HANSEN, Appellant, *v.* HARRAH'S, a Nevada Corporation, CLAIMS ADMINISTRATION SYSTEMS, INC., a California Corporation, dba CDS OF NEVADA, Respondents.

No. 14341

PAUL D. LEWIS, Appellant, *v.* MGM GRAND HOTEL, RENO, INC., Respondent.

No. 14391

January 25, 1984                         675 P.2d 394

*Raymond Badger,* Carson City, for Appellant Hansen.

*Vargas & Bartlett,* and *Albert F. Pagni,* Reno, for Respondents Harrah's and CDS of Nevada.

*Warren W. Goedert,* Reno, for Appellant Lewis.

*McDonald, Carano, Wilson, Bergin, Bible, Frankovich & Hicks,* and *Valerie N. Strandell,* Reno, for Respondent MGM Grand Hotel.

*James Crockett* and *Nancyann Leeder,* Carson City, of the Amicus Curiae Committee of the Nevada Trial Lawyers Association, for Appellants.

## OPINION

*Per Curiam:*

These are consolidated appeals[1] from judgments dismissing

---

[1]The Court has determined that consolidation of these appeals will assist in their disposition. NRAP 3(b).

both appellants' complaints. For the reasons set forth here-inafter, we reverse and remand both cases to the district court.

The facts of each case are as follows:

*Hansen:* Hansen was a pinball-video repairman for Harrah's. After he was injured at work, Hansen filed a workmen's compensation claim. CDS, the claims administrator for Harrah's, a "self-insured employer,"[2] rejected the claim. On appeal, however, a hearings officer decided Hansen was entitled to full benefits. Harrah's subsequently fired Hansen. Hansen filed a complaint alleging failure to pay benefits due[3] as well as retaliatory discharge and seeking compensatory and punitive damages. Harrah's filed a motion to dismiss based on Hansen's failure to exhaust administrative remedies under NRS 616, Nevada's Industrial Insurance Act (Act). CDS has yet to answer Hansen's complaint. The trial court dismissed Hansen's complaint with prejudice, and this appeal ensued.

*Lewis:* Lewis was an assistant bar manager for the Reno MGM, another "self-insured employer." Lewis suffered a hernia injury at work and made a workmen's compensation claim. MGM's claims administrator initially denied his claim, but on appeal the hearings officer ordered that payments be made to Lewis.

MGM then fired Lewis. Lewis filed a complaint alleging retaliatory discharge and seeking compensatory and punitive damages. MGM thereafter filed a motion to dismiss, or in the alternative, motion for summary judgment. The trial court, recognizing that Nevada has not yet adopted the retaliatory discharge exception to the at-will employment rule and also believing that creation of such a cause of action is a legislative prerogative, granted MGM's motion and dismissed Lewis' complaint. This appeal ensued.[4]

We first consider whether Nevada should adopt the public policy exception to the at-will employment rule recognizing as a proper cause of action retaliatory discharge for filing a workmen's compensation claim. Initially, it must be recognized that there is a significant split of authority regarding this issue. *See* annot., 63 ALR3d 979 (1975). We are called upon now to decide the issue for the first time.

---

[2] NRS 616.112 provides:

> "Self-insured employer" defined. "Self-insured employer" means any employer who possesses a certification from the commissioner of insurance that he has the capability to assume the responsibility for the payment of compensation under this chapter or chapter 617 of NRS.

[3] Hansen apparently received his benefits after filing suit.

[4] The Nevada Trial Lawyer's Association filed an amicus curiae brief on behalf of Hansen and Lewis.

The position asserted by Harrah's and MGM (employers) is grounded upon two principles: (1) Nevada's common law at-will employment rule which allows employers to discharge employees for any reason; and (2) the Nevada Legislature's intent, demonstrated by enactment of extensive workmen's compensation laws, to provide statutory remedies as the exclusive source of employees' relief. We are not persuaded.

We realize that certain other jurisdictions have adopted the position employers here have taken, *e.g.,* Martin v. Tapley, 360 So.2d 708 (Ala. 1978); Segal v. Arrow Industries Corporation, 364 So.2d 89 (Fla. 1978); Bottijliso v. Hutchison Fruit Company, 635 P.2d 992 (N.M. 1981), nevertheless, the at-will employment rule is subject to limited exceptions founded upon strong public policy; and the failure of the legislature to enact a statute expressly forbidding retaliatory discharge for filing workmen's compensation claims does not preclude this Court from providing a remedy for what we conclude to be tortious behavior.

Nevada's workmen's compensation laws reflect a clear public policy favoring economic security for employees injured while in the course of their employment. It has been a long-standing policy of this Court to liberally construe such laws to protect injured workers and their families.

> Unquestionably, compensation laws were enacted as a humanitarian measure. The modern trend is to construe the industrial insurance acts broadly and liberally, to protect the interest of the injured worker and his dependents. A reasonable, liberal and practical construction is preferable to a narrow one, since these acts are enacted for the purpose of giving compensation, not for the denial thereof.

Nevada Industrial Commission v. Peck, 69 Nev. 1, 10-11, 239 P.2d 244, 248 (1952). Failure to recognize the cause of action of retaliatory discharge for filing a workmen's compensation claim would only undermine Nevada's Act and the strong public policy behind its enactment. The Supreme Court of Indiana first recognized this rationale and created a cause of action in Frampton v. Central Indiana Gas Company, 297 N.E.2d 425, 427 (Ind. 1973):

> The Act creates a duty in the employer to compensate employees for work-related injuries (through insurance) and a right in the employee to receive such compensation. But in order for the goals of the Act to be realized and for

public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation—opting, instead, to continue their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation.

Many other states, as a result of similar reasoning, have also adopted or recognized a public policy exception to the at-will rule making retaliatory discharge for filing a workmen's compensation claim actionable in tort. Sventko v. Kroger Company, 245 N.W.2d 151 (Mich. 1976); Kelsay v. Motorola, Inc., 384 N.E.2d 353 (Ill. 1978); Brown v. Transcon Lines, 588 P.2d 1087 (Ore. 1978); Lally v. Copygraphics, 428 A.2d 1317 (N.J. 1981); Murphy v. City of Topeka-Shawnee County Department of Labor Services, 630 P.2d 186 (Kan. 1981); Parnar v. Americana Hotels, Inc., 652 P.2d 625 (Hawaii 1982).

We know of no more effective way to nullify the basic purposes of Nevada's workmen's compensation system than to force employees to choose between a continuation of employment or the submission of an industrial claim. In the absence of an injury resulting in permanent total disability, most employees would be constrained to forego their entitlement to industrial compensation in favor of the economics necessity of retaining their jobs. Moreover, Nevada's employers have enjoyed immunity from common law tort claims by injured employees because of the state policy to compensate employees for work-related injuries regardless of fault. It would not only frustrate the statuory scheme, but also provide employers with an inequitable advantage if they were able to intimidate employees with the loss of their jobs upon the filing of claims for insurance benefits as a result of industrial injuries.

In view of the foregoing, our course is clear. We elect to support the established public policy of this state concerning injured workmen and adopt the narrow exception to the at-will employment rule recognizing that retaliatory discharge by an employer stemming from the filing of a workmen's compensation claim by an injured employee is actionable in tort. Since both the cause of action and the remedy are governed by the law of torts, there is no basis for administrative relief within

the framework of the state industrial insurance system, and hence no need to exhaust purported administrative remedies as suggested by employers.

We are also asked to rule upon the availability of punitive damages in an action for unlawful discharge in retaliation for filing a workmen's compensation claim. We hold that, as with any intentional tort, punitive damages are appropriate in cases where employees can demonstrate malicious, oppressive or fraudulent conduct on the part of their employers in accordance with NRS 42.010. Indeed, the threat of punitive damages may be the most effective means of deterring conduct which would frustrate the purpose of our workmen's compensation laws.

Imposition of punitive damages in the instant cases, however, would be unfair. We have stated that the justification for punitive damages is "to punish the offender and deter others." Summa Corporation v. Greenspun, 96 Nev. 247, 257, 607 P.2d 569, 575 (1980). It would be unfair to punish employers for conduct which they could not have known beforehand was actionable in this jurisdiction. Using this same reasoning, other courts have likewise held that punitive damages should not be awarded in the case which initially adopts this new cause of action. *Kelsay,* 384 N.E.2d at 360; *Brown,* 588 P.2d at 1095; *Murphy,* 630 P.2d at 193. Therefore, assuming appellants are able to prove their allegations of retaliatory discharge against employers, the latters' conduct in the instant cases does not justify the imposition of punitive damages. Punitive damages may be, however, appropriately awarded for any such cause of action that arises subsequent to this opinion.

We reverse and remand both cases for action consistent with this opinion, with the proviso that, in the event either employee or both employees prevail at trial, no punitive damages be awarded.

The judgments dismissing appellants' complaints are reversed and remanded.