STATE INDUSTRIAL INSURANCE SYSTEM, AN AGENCY OF THE STATE OF NEVADA, APPELLANT, v. UNITED EXPOSITION SERVICES CO., RESPONDENT.

No. 22834

February 4, 1993                                      846 P.2d 294

*R. Scott Young,* General Counsel, *William A. Zeigler,* Associate General Counsel, State Industrial Insurance System, Carson City, for Appellant.

*J. Michael McGroarty,* Las Vegas, for Respondent.

## OPINION

By the Court, SPRINGER, J.:

In an administrative review, the trial court held that when an employer fails to follow the appeal procedures provided in NRS 616.5412,[1] the employer may still seek a later review of an

---

[1]NRS 616.5412, under the headnote "appeals," provides that "a person who is aggrieved" may request a hearing before a hearing officer so as to appeal from a "determination of an insurer." This statute provides the exclusive recourse for aggrieved insurers and insureds with regard to contested claims.

employee's permanent partial disability award by recourse to NRS 616.392, which provides for an appeal from a "written decision of an employee of the system relating to employers' account." This was error because NRS 616.5412 provides the exclusive procedure for the appeal of disability adjudications and because NRS 616.392 is clearly inapplicable to this case.

The dissenting justice is appropriately concerned about the manner in which the State Industrial Insurance System ("SIIS") handled this claim, but this concern should not distract the court from its clear duty to decide the narrow issue presented by this appeal. The issue before us is whether an employer has administrative appeal rights in a contested worker disability case that go beyond the procedures provided in NRS 616.5412. The answer is, "no."

The legislature has set up the administrative appeals process articulated in NRS 616.5412 for claims relating to SIIS decisions granting or denying benefits to an injured worker. NRS 616.5412 provides that any person who is "aggrieved by . . . [a] determination of an insurer" may appeal from the determination by "filing a request for a hearing before a hearing officer." Any such request must be filed within sixty days after the written determination was mailed. An employer is an "aggrieved person" under NRS 616.5412, and this provision provides an exclusive avenue of appeal from SIIS decisions granting or denying benefits. If employers had the right to bypass the NRS 616.5412 hearing process and file an additional or alternative appeal with the SIIS Manager, this would seriously complicate and interfere with the unitary appeals system provided for in the statute for reviewing disability awards and could place an intolerable burden on the SIIS Manager.

In the present case, the facts are not in dispute, and we are presented with only the one legal issue, an issue which relates to the interpretation of statutory provisions. Questions of law are reviewed de novo. *See, e.g.,* Arizona Bd. of Regents v. Phoenix Newspapers, 806 P.2d 348 (Ariz. 1991); M.S. v. People, 812 P.2d 632 (Colo. 1991); Crocker Nat'l Bank v. San Francisco, 782 P.2d 278 (Cal. 1989). "[A] reviewing court may undertake independent review of the administrative construction of a statute." American Int'l Vacations v. MacBride, 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983). We have thus undertaken an independent review of the mentioned statutory provisions and conclude that an employer has no appeal rights in the case of a disability award other than those provided by NRS 616.5412.

In the present case, United failed to appeal under NRS 616.5412 from a SIIS decision to pay a claimant a permanent partial disability award and to appeal from a second SIIS decision to provide the claimant with rehabilitation benefits, even though SIIS notified United that it could appeal from both of these decisions. Instead, United waited more than a year and then requested a hearing with the SIIS Manager pursuant to NRS 616.392. NRS 616.392(1) authorizes the SIIS Manager to hear certain types of complaints relating to an employer's account and states the following:

> 1. Any party aggrieved by a letter issued pursuant to NRS 616.288[2] or a written decision of an employee of the system relating to employers' accounts, including but not limited to matters concerning audits and the classification of risks, may appeal from the letter or decision by filing a notice of appeal with the manager within 30 days after the date of the letter or decision.

The only conceivable avenue for administrative review by United under NRS 616.288 would on appeal be from "a written decision of an employee of the system relating to employers' accounts." We cannot identify in this record any written decision by an SIIS employee relating to United's *accounts*. United did receive a copy of a letter dated January 17, 1989, in which the claimant was offered an award and advised the claimant that the employer "had the right to appeal this decision." It is hard to give much credence to the argument that this "decision" is one "relating to [United's] accounts." Although it could be argued that an award of benefits to an injured employee might increase the premiums paid by an employer to SIIS, SIIS's decisions regarding benefits awards do not "relate" to an employer's "accounts" within the meaning of NRS 616.392(1); and NRS 616.392(1) does not convey authority to the SIIS Manager to review such awards.[3]

As SIIS benefits awards do not fall within the ambit of NRS 616.392(1), we conclude that the SIIS Manager lacked authority to hear United's appeal. We therefore reverse the district court

---

[2]NRS 616.288 involves the obligation of a principal contractor to pay premiums for its subcontractors and independent contractors and is not applicable in this case.

[3]We also note that, as required under NRS 616.392(1), United did not file its appeal with the SIIS Manager within thirty days after receiving written notice of SIIS's decisions.

judgment. United's SIIS account shall reflect SIIS's benefit awards to Quaney.

Rose, C. J., and Young, J., concur.[4]

Steffen, J., dissenting:

With a degree of reluctance stemming from a realization that the legislature is best suited to deal with unanticipated contingencies that may seriously impact the enormously encumbered State Industrial Insurance System ("SIIS" or "the System"), I nevertheless register my dissent in the name of fundamental fairness.

At the outset, SIIS concedes that it owes a duty of good faith and fair dealing to its policyholders (the employers of Nevada who are mandated by statute to participate in the State Industrial Insurance System) and injured workers. In administering the State Industrial Insurance System, SIIS, through its manager, determines and fixes the premium rates of employer-policyholders in order to "rate each individual risk *more equitably,* predicated upon the basis of the employer's *individual experience.*" NRS 616.380(1)(a) (emphasis added).

It is apparent from the language of the quoted statute that the manager is enjoined to determine and fix the rate of an employer's premiums based upon considerations of equity and the premium-paying employer's individual claim experience. There is no provision in the industrial insurance statutes for the manager determining an employer's premium rates based upon whatever the System or the manager "can get away with." *Equity* and *actual, individual claim experience* are the twin determinants of an employer's adjusted premium rates.

In the instant case, at least three factors seem clear. First, SIIS paid, and thereafter charged or will charge to United's account, $17,000 in rehabilitation costs for training Quaney to be a truck driver, despite the fact that he had been a professional truck driver for seventeen years. Second, despite medical findings that Quaney's industrial injury only temporarily aggravated a non-industrial degenerative joint disease in the lumbar spine, SIIS gave Quaney a permanent partial disability (PPD) award without even apportioning the award. Third, both the rehabilitation award and the PPD award reflect either a gross dereliction of duty by the System or a frightening degree of irresponsibility.

Simply stated, the position asseverated by SIIS is that United had no right to rely on the substantive or procedural propriety of the System's claims dispositions, and since United failed to

---

[4]The Honorable Miriam Shearing, Justice, did not participate in the decision of this matter.

appeal Quaney's rehabilitative and PPD awards to the Nevada Department of Administration hearing and appeals officers, all further avenues of relief are foreclosed. I would agree with SIIS if United had sought belatedly to merely reargue the weight of the evidence as a means of reducing Quaney's award. What United did was rely on the System's good faith determination of Quaney's entitlements under the law. United had no inclination to challenge, through appeal or otherwise, Quaney's right to receive a lawful and proper rehabilitative and PPD award.

It was only after United's counsel attempted to ascertain why United's industrial insurance premium rates were skyrocketing that the facts of the instant case came to light. Having discovered that SIIS was charging to United's account rehabilitative and PPD payments to and on behalf of Quaney that were unwarranted by the facts and the law, United petitioned the manager to adjust its accounts so that the System's mistakes and derelictions were charged to administrative expense and absorbed by all employers, rather than United alone. United's position is both fair and conducive to establishing premium rates based upon statutorily mandated principles of equity and an employer's true, individual loss experience. Placing the burden of the System's administrative blunders on a single employer under the guise of "individual experience" is hardly equitable.

I am also unpersuaded by the System's contention that the burden is on the employer to visit SIIS's offices and study its claims files in order to determine whether an appeal from an award should be pursued. Supposing a given file is incomplete or negligently maintained or otherwise deficient because of derelictions of a magnitude present in the instant case and the employer is misled to its detriment? Or supposing the claim is proper, but the System erroneously misstates the amount of the award chargeable to the employer, thereby causing an unwarranted and mistaken increase in the employer's premium rate? Or supposing a claims adjuster has colluded with a claimant in order to inflate an award, and evidence of the collusion is not ascertainable from the file? In neither the instant case nor the posited hypotheticals do we find issues pertaining to discretionary determinations concerning the amount of a given award based upon competent evidence and statutory sanction. Instead, we find awards not supported by the evidence or the law; awards, in the instant case, paid by SIIS and charged to United, who will ultimately bear the burden of payment.

As indicated above, SIIS would foreclose relief to United on the premise that its only available remedy was through timely appeals to a Nevada Department of Administration hearing officer or appeals officer and, failing in that administrative process,

petitioning the district court for judicial review. United responds by invoking NRS 616.392 as authority for an appeal to the manager to effectuate an equitable adjustment to its account, thereby spreading the unwarranted rehabilitation and PPD costs among all policyholders in the system.

United's position is in essence a challenge to the increased premium rate it will have to pay as a result of Quaney's rehabilitation and PPD awards, rather than a challenge to Quaney having received the awards. The distinction may be fine, but it nevertheless exists. Quaney benefitted from awards by SIIS that appear to be unwarranted by law or fact. The resulting claim "experience" was attributable to SIIS and its maladministration rather than United. If SIIS were a private insurer for profit, Quaney's improper benefits would be chargeable to the insurer, rather than the employer. Unfortunately, SIIS is immune from the financial impact of its own blunders, but as long as SIIS administers the System, it seems both just and equitable that all participating employers share the financial consequences of SIIS-imposed waste rather than the inculpable single employer who would otherwise bear the burden alone.

I am unconvinced that NRS 616.392 is not an appropriate vehicle for achieving equity in situations similar to the one before us. This statute, in pertinent part provides:

> 1. Any party aggrieved by . . . a written decision of an employee of the system relating to employers' accounts, including *but not limited to* matters concerning audits and the classification of risks, may appeal from the . . . decision by filing a notice of appeal with the manager within 30 days after the date of the . . . decision.
> 2. The decision of the manager is the final and binding administrative determination of an appeal relating to the issuance of final certificates or employers' accounts under this chapter, and the whole record consists of all evidence taken at the hearing before the manager and any findings of fact and conclusions of law based thereon.

(Emphasis supplied.)

NRS 616.392 expressly relates to decisions by employees of the System which impact employers' accounts, and the statute provides that all matters of that nature, without limitation, may be appealed to the manager of the System. In the context of this case, United placed trust in the System to perform its responsibilities in accordance with the facts and the law in processing Quaney's claims. The System violated United's trust and paid awards unauthorized by law and fact amounting to $30,000 for the benefit of Quaney. SIIS now seeks to justify charging the

consequences of its breach of trust to United on grounds that United should have made a timely effort to study Quaney's claims files at the System's offices in order to save the System from itself. Thus, the System disavows an employer's right to assume that SIIS will perform its duties consistent with law and fact.

As previously stated, if United were simply attempting to challenge the dollar cost of Quaney's benefits or the percentage of disability allowed, I would unhesitatingly agree that United's remedy was solely through the Department of Administration hearing and appeals officers, with final resort to judicial review and subsequent appeal to this court. However, United was willing to assume the risk that the System would be unduly liberal in adjusting Quaney's claims. The risk that United was not willing to assume was the utter abandonment of adherence to law and responsible claims adjusting by the System. Paying $17,000 to train Quaney to drive a truck is roughly analogous to paying $17,000 to teach the virtuoso, Caruso, how to sing. Moreover, paying a permanent partial disability award for the effect of an industrial injury that was diagnosed as temporary is almost equally indefensible. The System's contention that an industrial injury causing aggravation of a pre-existing condition is compensable, although true, misses the mark in Quaney's case. United's complaint concerns a permanent partial disability award that is unrelated to Quaney's industrial injury. Dr. Harris' final diagnosis attributed Quaney's permanent disability to non-industrially related degenerative joint disease that was only *temporarily* aggravated by the industrial accident. The clear import of the medical report is that the entire 8% PPD is attributable to a pre-existing disease unrelated to the industrial accident.

The avenue traveled by United in seeking relief from waste for which it was not responsible was eminently reasonable. Moreover, despite the majority's ascription of untimeliness to United's appeal to the manager under NRS 616.392, neither the System nor the manager complained of an untimely appeal. The System contends only that United should have appealed through the Department of Administration. The record also belies the majority's conclusion of untimeliness, as United did appeal within 30 days, the letter decision by the System denying relief.

I would hope that this type of case will be comparatively rare. Although United has a legitimate complaint concerning the lack of meaningful information submitted to employers by the System in connection with industrial claims, any change in the flow of data could impose significant burdens on a system already mired in logistics.[1] In any event, such changes are more appropriately considered by the legislature.

---

[1]Currently, employers are authorized to review claims files at SIIS offices.

My review of the record promoted an understanding of the rationale for the district court's ruling. It is apparent to me that if the quality of claims adjusting displayed in the instant case is tolerated and validated by the simple expedient of charging the employer, the statutory requirement of rate adjusting based upon equity and individual claim experience will be hollow indeed! On the other hand, if the System is held accountable, and the financial consequences of such waste is absorbed by all employers, perhaps the combined hue and cry will result in necessary or desirable reforms.

For the reasons stated above, I respectfully dissent.