MIGUEL CHAVEZ, APPELLANT, v. GAIL SIEVERS, AN INDIVIDUAL; PROSOURCE SALES & MARKETING, INC., A NEVADA CORPORATION; AND TODD HUNT, AN INDIVIDUAL, RESPONDENTS.

No. 34580

MIGUEL CHAVEZ, APPELLANT, v. GAIL SIEVERS, AN INDIVIDUAL; PROSOURCE SALES & MARKETING, INC., A NEVADA CORPORATION; AND TODD HUNT, AN INDIVIDUAL, RESPONDENTS.

No. 34932

April 12, 2002                                    43 P.3d 1022

---

[Rehearing denied May 7, 2002]

*Jeffrey A. Dickerson,* Reno, for Appellant.

*Douglas Roman Hill,* Reno, for Respondents.

# OPINION

By the Court, SHEARING, J.:

In these appeals, we are asked to recognize a common law tortious discharge action based upon alleged racial discrimination. Under NRS 613.330(1), the Nevada Legislature has provided a remedy for racial discrimination in employment only to those who work for employers with fifteen or more employees. Since we must respect the legislature's limitation, we decline to recognize a common law cause of action for employment discrimination based on race, even when the employer has fifteen employees or less. Additionally, we agree with the district court's conclusion that 42 U.S.C. § 1985(3) does not provide a cause of action for employment discrimination. Thus, we affirm the district court's order granting respondents summary judgment. We further conclude that the district court properly awarded attorney fees to respondents under NRCP 68 and NRS 17.115.

## FACTS

In 1995, appellant Miguel Chavez began working for respondent ProSource Sales & Marketing as an at-will employee. Gail Sievers, owner and president of ProSource, stated that she had known Chavez from a previous employer and had sought him out to work for her company. Sievers also insisted that she was fully aware of Chavez's ethnicity at the time she hired him. According to Sievers, Chavez was fired on August 15, 1997, for incompetence. At the time Chavez was fired, he had attained the position of warehouse manager.

Thereafter, Chavez filed a complaint against respondents (ProSource, Sievers, and ProSource general manager Todd Hunt) asserting that he was wrongfully terminated from his job on the basis of his race. Chavez's claims for relief included assault, intentional infliction of emotional distress, and tortious discharge. Chavez later amended the complaint to include a claim for violation of his civil rights under Title VII of the Civil Rights Act of 1964.[1]

In his complaint, Chavez contended that he worked in an environment hostile to Hispanics. Specifically, Chavez contended that Sievers referred to Hispanic employees as "stupid," and was demeaning toward them in the workplace. Moreover, Chavez asserted that Hunt once referred to him as a "f—ing Mexican moron." Chavez also claimed that on another occasion Hunt said,

---

[1]42 U.S.C. § 2000e et seq. (1994).

"Mexicans are stupid," and allegedly burped into Chavez's face. Chavez further maintained that Sievers tolerated Hunt's openly racist conduct toward the Hispanic employees.

Respondents moved the district court for summary judgment on the basis that the company does not employ fifteen or more employees and is therefore not subject to the federal laws regarding employment discrimination, or NRS 613.330, governing unlawful employment practices. Moreover, respondents contended that Nevada case law does not support a cause of action for intentional infliction of emotional distress and tortious discharge when the termination is allegedly for racial reasons.

Chavez opposed the motion, and again moved to amend the complaint to include a claim for conspiracy against Sievers and Hunt under 42 U.S.C. § 1985(3). Chavez also sought an extension to continue discovery on the number of ProSource employees. The district court granted Chavez's motion to amend and granted a ninety-day continuance. In an amended complaint, Chavez added a claim that Sievers and Hunt conspired under 42 U.S.C. § 1985(3) to deprive him of equal protection under the Fourteenth Amendment to the United States Constitution. He also withdrew the assault and Title VII claims. Respondents renewed their motion for summary judgment, and the district court granted the motion.[2]

Respondents then moved the district court for attorney fees under NRCP 68 and NRS 17.115. During the proceedings, four separate offers of judgment had been made. Chavez made the first offer of judgment in the amount of $9,999.00. Thereafter, respondents made three separate offers of judgment that Chavez rejected. Each offer was in the amount of $1,001.00. The district court granted respondents' motion for attorney fees based on Chavez's rejection of these offers. Chavez then appealed.

## DISCUSSION

Summary judgment is appropriate if there is no genuine issue

---

[2]In its order granting summary judgment, the district court treated Chavez's claims for intentional infliction of emotional distress and tortious discharge in tandem, and granted summary judgment on both claims on the basis that there is no cause of action for harassment or termination for racial reasons unless the employer has fifteen or more employees. On appeal, Chavez does not challenge the portion of the district court's order dismissing the claim for intentional infliction of emotional distress. Accordingly, this issue is not before us. See Vega v. Eastern Courtyard Assocs., 117 Nev. 436, 439 n.5, 24 P.3d 219, 220 n.5 (2001) (noting that this court will not consider an issue when resolution of the issue would not affect the outcome of a case); Badillo v. American Brands, Inc., 117 Nev. 34, 42, 16 P.3d 435, 440 (2001) (stating that this court need not consider an issue that has not been fully raised by appellant or meaningfully briefed by either party).

of material fact and the moving party is entitled to judgment as a matter of law.[3] "A genuine issue of material fact is one where the evidence is such that a reasonable jury could return a verdict for the non-moving party."[4] The evidence is viewed in the light most favorable to the non-movant.[5] We review summary judgment anew.[6]

### Employment discrimination

Under Nevada's employment discrimination statute, it is unlawful for an employer "to discharge any person, or otherwise to discriminate against any person with respect to his compensation, terms, conditions or privileges of employment, because of his race, color, religion, sex, sexual orientation, age, disability or national origin."[7] The statute defines "employer" as "any person who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."[8]

Chavez concedes that respondent ProSource employs fewer than fifteen employees and that he does not have an action under federal or state discrimination statutes. Nevertheless, Chavez urges this court to recognize a common law tortious discharge cause of action when an employee is discharged allegedly because of race. Although we recognize that racial discrimination is fundamentally wrong and undoubtedly against Nevada's public policy,[9] we are constrained by the legislature's decision to address the issue

---

[3]*See* NRCP 56(c); *Butler v. Bogdanovich,* 101 Nev. 449, 705 P.2d 662 (1985).

[4]*Posadas v. City of Reno,* 109 Nev. 448, 452, 851 P.2d 438, 441-42 (1993).

[5]*Id.* at 452, 851 P.2d at 442.

[6]*Dermody v. City of Reno,* 113 Nev. 207, 210, 931 P.2d 1354, 1357 (1997); *see also SIIS v. United Exposition Services Co.,* 109 Nev. 28, 30, 846 P.2d 294, 295 (1993) (summarizing authority for the conclusion that matters of law are reviewed de novo).

[7]NRS 613.330(1)(a).

[8]NRS 613.310(2).

[9]*See* NRS 233.010(1) (setting forth Nevada's public policy against discrimination in employment and housing). The dissent raises issues concerning our decision in *Bigelow v. Bullard,* 111 Nev. 1178, 901 P.2d 630 (1995). The *Bigelow* opinion did not address tortious discharge based on race and therefore is not pertinent here. *Bigelow* concerned an employee's refusal to participate in the employer's alleged illegal conduct; although the employee was not fired because of his race, he was apparently fired because he objected to his employer's racially discriminatory policies. While *Bigelow* is not relevant to the issues raised in this appeal, we join the dissent's criticism of *Bigelow,* which concluded that an employee must go to ridiculously great lengths in objecting to an employer's questionable conduct to prevail on a claim for tortious discharge.

through legislation and to provide statutory remedies for only certain employees.[10]

The Nevada Legislature has provided that the remedies for racial discrimination in employment are limited to employees who work for employers with fifteen or more employees. The legislature sets the public policy of this state regarding racial discrimination in employment. Since the legislature determined that small businesses should not be subject to racial discrimination suits, we decline to create an exception to the at-will doctrine for alleged racial discrimination at these businesses.[11]

The concurring justices contend that the employment discrimination statute violates the equal protection clauses of both the federal and state constitutions.[12] They insist that no rational basis exists for the legislature to recognize the difference in the economic impact of litigation between "large" and "small" busi-

---

[10]*See* Nev. Const. art. 3, § 1(1); *Galloway v. Truesdell,* 83 Nev. 13, 422 P.2d 237 (1967) (recognizing that the legislature has the sole power to frame and enact legislation); *see also Passenger Corp. v. Passengers Assn.,* 414 U.S. 453, 458 (1974) (noting that "[a] frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies"); *Badillo,* 117 Nev. at 42, 16 P.3d at 440 (stating that "[a]ltering common law rights, creating new causes of action, and providing new remedies for wrongs is generally a legislative, not a judicial, function"); *Rupert v. Stienne,* 90 Nev. 397, 399-404, 528 P.2d 1013, 1014-17 (1974) (recognizing that this court has the power to modify or abrogate a common law cause of action; however, such power should be narrowly construed and exercised with caution).

[11]*Jennings v. Marralle,* 876 P.2d 1074 (Cal. 1994) (refusing to allow a wrongful discharge cause of action for age discrimination in violation of a public policy found in the California Fair Employment and Housing Act, when the statute explicitly exempts employers with fewer than five employees from the statutory scheme); *Brown v. Ford,* 905 P.2d 223, 228 (Okla. 1995) (stating that because the plaintiff's "sexual harassment claim does not fall within the statute's criteria for actionability—her workplace having less than fifteen employees—she is not shielded by any legislatively articulated public policy protection") (emphasis omitted); *Burton v. Exam Center Indus. & General Med.,* 994 P.2d 1261 (Utah 2000) (holding that the Utah legislature's statutory exclusion of small employers from the scope of the anti-discrimination statute was intentional, and small employers would continue to be exempt from the reach of the statute barring further legislation); *Roberts v. Dudley,* 993 P.2d 901, 912-17 (Wash. 2000) (Madsen, J., dissenting) (accusing the majority of exceeding its legitimate powers by using a state discrimination statute as a source for public policy for recognizing an exception to the employment at-will doctrine when the legislature explicitly exempted small employers from the statute's scope).

[12]U.S. Const. amend. XIV, § 1; Nev. Const. art. 4, § 21.

nesses and to limit the statutory remedy to "large" businesses on that basis. Chavez has not challenged the employment discrimination statute on constitutional grounds.[13] Even so, the legislature is free to make the distinction between large and small businesses.[14]

## Section 1985(3)

Under 42 U.S.C. § 1985(3), if two or more people conspire, for the purpose of depriving, either directly or indirectly, any person the equal protection of the laws or equal privileges and immunities under the law, the party deprived may have an action for the recovery of damages against the conspirators. A complaint asserting a cause of action under § 1985(3) must allege with particularity that the defendants conspired to carry out a deprivation of equal protection, or equal privileges and immunities, and were motivated by some racial or otherwise invidiously discriminatory animus.[15] Section 1985(3) is not intended to apply to all tortious, conspiratorial interferences with the rights of others.[16] Moreover, a § 1985(3) claim may not be brought to redress violations of employment rights created by Title VII.[17]

The United States Supreme Court has concluded that § 1985 "*creates* no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section."[18] Therefore, whether a § 1985(3) remedy is available depends on whether a federally-established right to equal protection under the law or the equal enjoyment of privileges and immunities of citizenship has been violated, and whether a remedial framework for the violation of that right already exists.[19]

---

[13]This court has repeatedly held that it will not consider constitutional issues that are unnecessary to the court's determination of the case. *See, e.g., Spears v. Spears,* 95 Nev. 416, 596 P.2d 210 (1979).

[14]*See Allen v. State, Pub. Emp. Ret. Bd.,* 100 Nev. 130, 136-37, 676 P.2d 792, 796 (1984) (noting that legislation necessarily involves line drawing, and if there is a rational basis for the distinction drawn, the legislation will be upheld).

[15]*Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971).

[16]*Id.* at 101.

[17]*Great American Fed. S. & L. Assn. v. Novotny,* 442 U.S. 366, 378 (1979).

[18]*Id.* at 376.

[19]*See Griffin,* 403 U.S. at 102; *Novotny,* 442 U.S. at 376-78.

Chavez contends that the district court erred in granting respondents' motion for summary judgment after determining that a claim under § 1985(3) did not exist. The district court concluded that Chavez failed to establish that there was a conspiracy by respondents to do anything unlawful, and that § 1985(3) does not provide a cause of action for employment discrimination. We agree. The record supports the district court's determination that Chavez failed to establish that there was a genuine issue for trial concerning respondents' alleged conspiracy under § 1985(3). Moreover, respondents demonstrated that they were legally entitled to judgment, because § 1985(3) creates no rights; it is only a remedial statute. Thus, the district court did not err in granting respondents' motion for summary judgment as to the § 1985(3) cause of action.

*Attorney fees*

NRCP 68 and NRS 17.115 govern offers of judgment and provide that the district court may award attorney fees to a party who makes an offer of judgment when the offeree rejects the offer and the judgment ultimately obtained by the offeree is less favorable than the offer. NRCP 68(c)(1) and NRS 17.115(6) allow for a joint offer made by multiple offerors. Whether to award attorney fees, pursuant to NRCP 68 and NRS 17.115, lies within the discretion of the district court.[20] When exercising this discretion, the district court is required to evaluate the following factors from *Beattie v. Thomas*:[21]

> (1) whether the plaintiff's claim was brought in good faith; (2) whether the defendants' offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount.

Chavez contends that the district court erred in awarding attorney fees because respondents made improper, unapportioned offers of judgment. Chavez also contends that the judgment was not more favorable than the offers of judgment, because respondents did not recover a monetary judgment.

Both NRCP 68 and NRS 17.115 provide for multiple parties making a joint offer of judgment. These provisions were amended

---

[20]*See Allianz Ins. Co. v. Gagnon,* 109 Nev. 990, 993, 860 P.2d 720, 722 (1993); *Beattie v. Thomas,* 99 Nev. 579, 588, 668 P.2d 268, 274 (1983).

[21]99 Nev. at 588-89, 668 P.2d at 274.

in 1998 to allow for unapportioned offers of judgment under certain circumstances.[22] In the present case, respondents' first offer of judgment was made in 1998, before the amendments that specifically permit such offers; however, the two later offers (identical to respondents' first offer) fall within the current rule and statutory provision. In addition, the district court weighed the *Beattie* factors before awarding attorney fees to respondents. Accordingly, the district court did not abuse its discretion in awarding these fees.

## CONCLUSION

Nevada's Legislature has created statutory remedies for employment discrimination and has explicitly exempted small employers from the remedies available. Accordingly, we decline to recognize a public policy exception to the employment at-will doctrine based on race discrimination with respect to small employers. Further, we conclude that the district court did not err in granting respondents' motion for summary judgment as to the § 1985(3) cause of action. Finally, the district court did not abuse its discretion in awarding attorney fees. Therefore, we affirm the district court's orders.

YOUNG, AGOSTI and BECKER, JJ., concur.

ROSE, J., with whom MAUPIN, C. J., and LEAVITT, J., agree, concurring:

In *Bigelow v. Bullard,*[1] we recognized that in some cases racial discrimination runs counter to Nevada's public policy, and we provided an extremely limited remedy for those who suffer such employment discrimination. Our *Bigelow* decision has been widely and rightfully criticized, most recently by Nevada's very own Boyd School of Law.[2]

This court now has the opportunity to correct this error and provide a meaningful remedy for those proven to be the victims of racial discrimination. However, the majority chooses to defer to the Legislature and let *Bigelow* stand without modification. We should not let pass the opportunity to overrule *Bigelow*.

A fundamental value of our nation is that racial discrimination

---

[22]*See* 1999 Nev. Stat., ch. 258, §§ 1-3, at 1102-05 (setting forth the amendment to NRS 17.115 and providing that the amendment does not apply to an offer of judgment that was made prior to the effective date of the act, May 24, 1999); NRCP 68 (replaced, effective October 27, 1998).

[1]111 Nev. 1178, 901 P.2d 630 (1995).

[2]J. Wade Kelson, Note, *Public Policy and Wrongful Discharge: The Continuing Tragedy of Bigelow v. Bullard,* 1 Nev. L.J. 249, 273 (2001) ("The [*Bigelow*] result silences employees' voices, empowers unreasonably the employer, and breaks down the safeguard against abuse of the at-will employment doctrine.").

is wrong. The Fourteenth Amendment to the United States Constitution forbids enactments that "deny to any person . . . the equal protection of the laws." Article 4, Section 21, of our own constitution echoes that principle, requiring that all laws be "general and of uniform operation throughout the State." A multitude of federal and state statutes prohibit racial discrimination, and most provide meaningful remedies to those who suffer such discrimination. But racial discrimination in employment is perhaps the worst form because it often prevents a person from earning a decent livelihood and destroys the chance to improve one's lot in life.

Nevada recognizes that discrimination in employment is wrong, but provides a remedy for this discrimination only if an employer has fifteen or more employees. Those employees who work for a business with less than fifteen employees have no remedy for racial discrimination. The economic concerns the Legislature seeks to address by distinguishing small and large businesses are negligible and do not amount to the "rational basis" required to justify creating the two classes.[3] Thus, the distinction clearly violates the equal protection clauses of our federal and state constitutions.[4] To rule otherwise would permit the Legislature to declare racial discrimination illegal, but arbitrarily provide a remedy to some, but not to all, employees who are victims of this insidious practice. This, we should not do.

My proposal to the majority would be to take the obvious step and declare racial discrimination in employment against our public policy. We have declared that forcing an employee to work in an unsafe workplace[5] and firing an employee in retaliation for filing a workers' compensation claim are against our public policy.[6] Surely, racial discrimination in employment is on an equal footing with these other declared violations of public policy.

---

[3]See State Farm v. All Electric, Inc., 99 Nev. 222, 225, 660 P.2d 995, 997 (1983) ("Legislative classifications must apply uniformly to all who are similarly situated, and the distinctions which separate those who are included within a classification from those who are not must be reasonable, not arbitrary."), overruled on other grounds by Wise v. Bechtel Corp., 104 Nev. 750, 753-54, 766 P.2d 1317, 1319 (1988).

[4]See id. (holding that a statute of repose providing immunity after six-year period for architects and contractors, while denying such immunity to owners and material suppliers, was unconstitutional as violative of equal protection because no rational basis supported treating the classes differently); Laakonen v. District Court, 91 Nev. 506, 538 P.2d 574 (1975) (holding that a statute barring an automobile guest passenger from any recovery for injury attributable to negligent driving by his host violated the equal protection clauses of the federal and state constitutions).

[5]D'Angelo v. Gardner, 107 Nev. 704, 719, 819 P.2d 206, 216 (1991).

[6]Hansen v. Harrah's, 100 Nev. 60, 64, 675 P.2d 394, 397 (1984).

Once recognizing that racial discrimination in employment is against Nevada's public policy, I would reject the narrow *Bigelow* remedy and permit all those suffering racial discrimination in employment the right to file suit if legislation does not otherwise provide them an adequate remedy.[7] This would send a clear and unmistakable message throughout Nevada that racial discrimination, in all its ugly forms, is against Nevada's public policy and that an adequate remedy will be provided for all our citizens who suffer this discrimination in the workplace.

Even after overruling *Bigelow,* I would nevertheless conclude that Chavez brought forth insufficient facts to establish racial discrimination. Accepting his facts as true, we have only Chavez's statements that during the course of his employment the general manager made several offensive remarks regarding Hispanic people. This is not sufficient to establish wrongful termination because of racial discrimination, and we have previously said that uncorroborated allegations of an employer's verbal statements are insufficient to overcome the presumption of at-will employment.[8]

Accordingly, I concur in the result reached by the majority, but certainly do not agree with the reasoning used to reach this result.

---

[7]*See Sands Regent v. Valgardson,* 105 Nev. 436, 440, 777 P.2d 898, 900 (1989) (refusing to recognize a tortious discharge cause of action based on age discrimination where the employee could recover under federal and state age discrimination statutes).

[8]*Yeager v. Harrah's Club, Inc.,* 111 Nev. 830, 836, 897 P.2d 1093, 1096 (1995).