138 Nev., Advance Opinion 58

IN THE SUPREME COURT OF THE STATE OF NEVADA

DANNY CEBALLOS,
Appellant,
vs.
NP PALACE, LLC, D/B/A PALACE
STATION HOTEL & CASINO,
Respondent.

No. 82797



FILED

AUG 11 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court judgment in an employment action. Eighth Judicial District Court, Clark County; Bita Yeager, Judge.

*Affirmed.*

Lagomarsino Law Office and Andre M. Lagomarsino, Henderson, for Appellant.

Fisher & Phillips LLP and Scott M. Mahoney, Las Vegas, for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

## OPINION

By the Court, PICKERING, J.:

NRS 613.333 creates a private right of action in favor of an employee who is discharged from employment for engaging in "the lawful use in this state of any product outside the premises of the employer during the employee's nonworking hours." The question presented is whether adult recreational marijuana use qualifies for protection under this statute. We agree with the district court that it does not. Although Nevada has

22-25130

decriminalized adult recreational marijuana use, the drug continues to be illegal under federal law. Because federal law criminalizes the possession of marijuana in Nevada, its use is not "lawful . . . in this state" and does not support a private right of action under NRS 613.333. Further, because NRS 678D.510(1)(a) authorizes employers to prohibit or restrict recreational marijuana use by employees, an employee discharged after testing positive at work based on recreational marijuana use does not have a common-law tortious discharge claim. We therefore affirm.

I.

Danny Ceballos worked as a table games dealer at Palace Station for more than a year, with no performance or disciplinary issues. But toward the end of his shift on June 25, 2020, he slipped and fell in the employee breakroom. Palace Station security responded, first assisting Ceballos, then requiring him to submit to a drug test. The test came back positive for marijuana, and on July 16, 2020, Palace Station terminated Ceballos based on the positive test result. Ceballos sued, and the district court dismissed the complaint under NRCP 12(b)(5) for failure to state a claim upon which relief can be granted.

Because this appeal challenges the grant of a motion to dismiss, our review is de novo, and we accept as true all well-pleaded facts alleged in the complaint. *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008). Per the complaint, Ceballos was not intoxicated or impaired during his June 25 shift; he did not use marijuana in the 24 hours before that shift; and he was at home, not at work, when he engaged in the recreational marijuana use that produced the positive test result. The complaint also alleges facts establishing that Ceballos's marijuana use complied with Nevada's recreational marijuana laws.

## II.

### A.

Ceballos frames his complaint in two counts. The first count asserts a claim for damages under NRS 613.333. This statute makes it an unlawful employment practice for an employer to:

> Discharge . . . any employee . . . *because the employee engages in the lawful use in this state of any product* outside the premises of the employer during the employee's nonworking hours, if that use does not adversely affect the employee's ability to perform his or her job or the safety of other employees.

NRS 613.333(1)(b) (emphasis added). "An employee who is discharged . . . in violation of subsection 1 . . . may bring a civil action against the employer" for "[d]amages equal to the amount of the lost wages and benefits." NRS 613.333(2)(d).

Nevada decriminalized adult recreational marijuana use by voter initiative effective January 1, 2017. *See* Secretary of State, Statewide Ballot Question No. 2, 14 (Nev. Nov. 8, 2016). Consistent with the original initiative statutes, NRS 678D.200(1) provides that adult recreational marijuana use "is exempt from state prosecution" so long as such use complies with the conditions stated in NRS Chapter 678D.[1] Since the

---

[1]The initiative statutes were initially codified as NRS Chapter 453D. The 2019 Legislature added to and amended these statutes and recodified them as NRS Chapter 678D, effective July 1, 2020. *See* 2019 Nev. Stat., ch. 595, § 245, at 3896; *id.* § 246(4)(a), at 3896. Ceballos's marijuana use and subsequent termination straddle the July 1, 2020, date when NRS Chapter 678D replaced NRS Chapter 453D. The parties analyze the issues on appeal under NRS Chapter 678D, and so do we. The recodification/amendment process did not materially change the provisions in NRS Chapter 678D addressed in this appeal.

complaint sufficiently alleges facts establishing that the marijuana use that produced Ceballos's positive test result complied with NRS Chapter 678D, such use qualifies as "lawful" under Nevada state law. But marijuana possession remains illegal and federally prosecutable under the federal Controlled Substances Act (the CSA). *See* 21 U.S.C. § 844(a) (2018). So, we must decide what the phrase "lawful use in this state" means for purposes of NRS 613.333(1)—does it mean lawful under state law, or does it mean generally lawful, under both state and federal law?

The general-terms canon is a basic rule courts follow in interpreting statutes. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 101 (2012). Under this canon, "general terms are to be given their general meaning." *Id.* Ceballos posits that, because NRS 613.333 was enacted in 1991, decades before Nevada decriminalized recreational marijuana use, the drafters did not think about the state-federal split that exists today as to marijuana. On this basis, he urges us to infer an exception for federal illegality in NRS 613.333 and read lawful "in this state" to mean lawful "under Nevada state law." But this runs directly contrary to the general-terms canon, which holds that "the presumed point of using general words is to produce general coverage—not to leave room for courts to recognize ad hoc exceptions." *Id.*

"Lawful" means "legal; warranted or authorized by the law; having the qualifications prescribed by law; not contrary to nor forbidden by the law; not illegal." *Lawful, Black's Law Dictionary* 885 (6th ed. 1990); *see also Lawful, Merriam-Webster's Collegiate Dictionary* 705 (11th ed. 2019) (defining "lawful" as "being in harmony with the law" and "constituted, authorized, or established by law"). The prepositional phrase "in this state" is not synonymous with "under state law"—when the

Legislature means to specify state law, it does so. *See, e.g.*, NRS 451.556(1)(b) (allowing a minor to be an organ donor where the minor is "[a]uthorized under state law to apply for a driver's license"); NRS 624.920(1) (requiring that a contractor be licensed "under state law"). Instead, the phrase connotes geographical boundaries and indicates that laws applicable to conduct occurring in Nevada are to be considered in assessing the legality of an employee's product use. One of these laws is the federal criminal prohibition against marijuana possession. *See Ross v. RagingWire Telecomms., Inc.*, 174 P.3d 200, 204 (Cal. 2008) (explaining that state laws cannot completely legalize marijuana use "because the drug remains illegal under federal law") (citing the CSA, 21 U.S.C. §§ 812, 844(a) (2006)).

The Colorado Supreme Court confronted a similar issue in *Coats v. Dish Network, LLC*, 350 P.3d 849 (Colo. 2015). The statute considered in *Coats* made it an unfair employment practice to discharge an employee "due to that employee's engaging in *any lawful activity* off the premises of the employer during non-working hours." Colo. Rev. Stat. § 24-34-402.5(1) (2012) (emphasis added). Coats's employer fired him after he tested positive for marijuana on a random drug test, in violation of the employer's drug policy. *Coats*, 350 P.3d at 850-51. Like Ceballos's marijuana use, Coats's marijuana use was legal under state law but illegal under federal law. *See id.* at 850, 852. Because "lawful activity" signifies an activity that is permitted by law, or, conversely, not contrary to or forbidden by law, the court held that the statute did not apply to Coats because his marijuana use, though legal under state law, was illegal under federal law.

> Nothing in the language of the statute limits the term "lawful" to state law. Instead, the term is used in its general, unrestricted sense, indicating that a "lawful" activity is that which complies with applicable "law," *including state and federal law.* We therefore decline Coats's invitation to engraft a state law limitation onto the statutory language.

*Id.* at 852 (emphasis added). Ceballos notes that the statute in *Coats* referred to "lawful activity," whereas NRS 613.333(1)(b) refers to activity "lawful . . . in this state." But this difference in phrasing does not alter the analysis—the phrase "lawful . . . in this state" is general and encompasses state and federal law applicable to conduct occurring within the state. Acts committed in Nevada that violate federal law are not "lawful . . . in this state" under the general phrasing in NRS 613.333(1).

Ceballos cites two additional statutes—NRS 613.132 and NRS 678D.510(1)(a)—that he contends support reading "lawful in this state" to mean "lawful under state law." Enacted in 2019, NRS 613.132(1) addresses hiring, not discharge; it provides that, with certain exceptions, "[i]t is unlawful for any employer in this State to fail or refuse to hire a prospective employee because the prospective employee submitted to a screening test and the results of the screening test indicate the presence of marijuana." 2019 Nev. Stat., ch. 421, § 2, at 2625. NRS 678D.510(1)(a) was one of the original initiative statutes decriminalizing adult marijuana use that took effect January 1, 2017. *See* Statewide Ballot Question No. 2, *supra*, at 27; *supra* note 1. NRS 678D.510(1)(a) provides that "[t]he provisions of this chapter"—NRS Chapter 678D, decriminalizing adult recreational marijuana use—"do not prohibit . . . [a] public or private employer from maintaining, enacting and enforcing a workplace policy prohibiting or restricting actions or conduct otherwise permitted under this chapter."

(O) 1947A

NRS 613.132 and NRS 678A.510(1)(a) recognize and address the policy tensions between the statutes decriminalizing marijuana and employment law. But these statutes do not support Ceballos's reading of NRS 613.333(1)(b) and, in fact, confirm our reading of it. Subsection 1(a) of NRS 613.333 extends the "unlawful employment practice" it establishes to reach employers who "[f]ail or refuse to hire a prospective employee," equally with those who discharge an employee, based on product use that is "lawful . . . in this state." If Ceballos is right and NRS 613.333 only addresses product use that is lawful under Nevada law, passing NRS 613.132 in 2019 would have served little purpose, since NRS 613.333(1)(a) would already reach the employer who refuses to hire a prospective employee who tests positive for marijuana. And read as Ceballos urges, NRS 613.333(1)(b) would conflict with NRS 678D.510(1)(a), which expressly permits employers to enforce workplace policies prohibiting or restricting employees' recreational marijuana use. Whenever possible, this court interprets separate statutes harmoniously. *See Watson Rounds, P.C. v. Eighth Judicial Dist. Court*, 131 Nev. 783, 789, 358 P.3d 228, 232 (2015). Read in harmony with NRS 613.333, NRS 613.132 and NRS 678D.510 support that when NRS 613.333(1) refers to product use that is lawful in this state, it means lawful under both state and federal law, not just lawful under Nevada law.

## B.

The second count of the complaint asserts a common-law tortious discharge claim. "An employer commits a tortious discharge by terminating an employee for reasons which violate public policy." *D'Angelo v. Gardner*, 107 Nev. 704, 712, 819 P.2d 206, 212 (1991). Ceballos argues that his termination offends public policy in two ways. First, he maintains

(O) 1947A

that "Nevada has a strong public policy interest in protecting the statutory rights of its citizens" and that "[i]t is [his] statutory right, under NRS [Chapter] 678D, to engage in [marijuana] consumption pursuant to the chapter's guidelines." Second, he avers that "Nevada has a strong public policy interest in ensuring its citizens are not denied the ability to support themselves and their families due to engagement in statutorily protected and completely lawful activities."[2]

The public policies Ceballos identifies do not rise to the level required to establish a tortious discharge claim arising out of a presumptively at-will employment relationship. In Nevada, "tortious discharge actions are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." *Sands Regent v. Valgardson*, 105 Nev. 436, 440, 777 P.2d 898, 900 (1989). This court has found a sufficient violation of "strong and compelling public policy" to justify a tortious discharge claim when an employer terminated an employee (1) "for refusing to work under conditions unreasonably dangerous to the employee," *D'Angelo*, 107 Nev. at 718, 819 P.2d at 216; (2) for refusing to engage in illegal conduct, *Allum v. Valley Bank of Nev.*, 114 Nev. 1313, 1323, 970 P.2d 1062, 1068 (1998); (3) for filing a workers' compensation claim, *Hansen v. Harrah's*, 100 Nev. 60, 64, 675 P.2d 394, 397 (1984); *see also Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 378, 989 P.2d 882, 885-86 (1999); (4) for reporting the employer's illegal activities to outside authorities, *Wiltsie v. Baby Grand Corp.*, 105 Nev. 291, 293, 774 P.2d 432, 433 (1989) (dictum); and (5) for performing jury duty, *D'Angelo*,

---

[2]The complaint and the record of proceedings in the district court do not support that Ceballos's complaint asserted, or tried to assert, a privacy-based tort claim.

107 Nev. at 712, 819 P.2d at 212 (dictum). Conversely, in *Chavez v. Sievers*, this court declined to allow an employee to pursue a tortious discharge claim for race discrimination against an employer too small for the state anti-discrimination laws to apply. 118 Nev. 288, 293-94, 43 P.3d 1022, 1025-26 (2002). And in *Sands Regent*, the court held that "age discrimination, as objectionable as it may be," does not justify allowing an employee to recover compensatory and punitive damages on a tortious discharge theory, where the statute prohibiting age discrimination in employment created a private right of action that limited the relief available to reinstatement and two years of lost wages. 105 Nev. at 439-40, 777 P.2d at 900.

Applying this law to the public policies Ceballos has identified, his tortious discharge claim falls short. Ceballos asserts a statutory right to engage in adult recreational marijuana use under NRS Chapter 678D when not at work, despite that use being detected by a drug test administered at work. Even setting aside its federal illegality, this asserted right is personal to Ceballos. It does not concern employer-coerced criminal activity, workers' compensation for an on-the-job injury, or public service, like jury duty or whistleblowing. With no public dimension or tie to dangerous or illegal working conditions, Ceballos's claim differs fundamentally from the "rare and exceptional cases" discussed above, in which this court allowed a public-policy-based tortious discharge claim to proceed because not allowing the claim would offend "strong and compelling public policy." *Id.* at 440, 777 P.2d at 900; *see* 2 Mark A. Rothstein et al., *Employment Law* § 9:9 (6th ed. 2019) (noting that most states have recognized public-policy-based tortious discharge claims and that the acts vindicated fall "into one or more of four broad categories[:] . . . (1) refusing to perform unlawful acts, (2) exercising legal rights, (3) reporting illegal

SUPREME COURT
OF
NEVADA

(O) 1947A

9

activity (whistleblowing), and (4) performing public duties") (footnotes omitted); *id.* at § 9:11 (addressing tortious discharge claims falling into category 2—claims by employees terminated for exercising legal rights—and noting that "[c]ourts generally require that this right relate to employment; employees must enjoy the right because of their status as employees, and not because of some other status they may have, such as citizen or taxpayer").

The interplay between adult recreational marijuana use and employment law, moreover, is one the Legislature has addressed in NRS 678D.510(1)(a) and, to a lesser extent, in NRS 613.132. Palace Station terminated Ceballos for failing a workplace drug test after engaging in adult recreational marijuana use before his shift. NRS 678D.510(1)(a) specifically authorizes employers to adopt and enforce workplace policies prohibiting or restricting such use. If the Legislature meant to require employers to accommodate employees using recreational marijuana outside the workplace but who thereafter test positive at work, it would have done so. *Cf.* NRS 678C.850(3) (requiring employers to accommodate the medical needs of employees who use medical marijuana unless certain exceptions exist). It did not. It also did not extend the protections afforded by NRS 613.333 and NRS 613.132 to reach the circumstances giving rise to Ceballos's termination. *See supra* Section II.A. (discussing the limits the Legislature has set on the protections NRS 613.333 and NRS 613.132 afford). This court declined to allow the employees in *Chavez* and *Sands Regent* to pursue common-law tortious discharge claims to redress the discrimination they alleged, because doing so would intrude on the

prerogative of the Legislature, which had enacted statutes addressing the same subject matter. *See Chavez*, 118 Nev. at 294, 43 P.3d at 1026; *Sands Regent*, 105 Nev. at 440, 777 P.2d at 900. Doing so would be even less appropriate here.

We affirm.

_____, J.
Pickering

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A